702 So.2d 1079 (1997)
Sandra GUILLORY, Plaintiff-Appellee,
v.
Rodlin James GUILLORY, Defendant-Appellant.
No. 97-354.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*1081 Nathan A. Cormie, Lake Charles, for Sandra Guillory,
Kathleen Kay, Lake Charles, for Rodlin James Guillory.
Before YELVERTON, COOKS and GREMILLION, JJ.
GREMILLION, Judge.
The defendant, Rodlin James Guillory, appeals the judgment of the trial court finding him in contempt and ordering him to pay the plaintiff, Sandra Guillory, $11,311.00 in past due child support and alimony, and attorney's fees. After reviewing the record, we reverse for the following reasons and render judgment in favor of Rodlin.

FACTS
Rodlin and Sandra were married in Jefferson Davis Parish on November 27, 1976. Two children were born of their marriage, Romaine and Ronotta. Following a separation, a judgment of divorce was granted to the Guillorys on December 11, 1992. In a joint stipulation, the parties agreed to joint custody of the minor children, with Sandra named the domiciliary parent. They further agreed that Rodlin would pay child support of $550.00 per month, until Ronotta graduated from college, and $250.00 per month in alimony until September 1996.
On January 10, 1996, Sandra filed a rule for contempt against Rodlin, seeking arrearages of $10,400.00 in child support and attorney's fees. Rodlin answered, asserting six affirmative defenses: that he and Sandra agreed that the child support would be $400.00 per month per child; that beginning in January 1993, Romaine lived with him, and that they agreed to reduce the child support to $400.00 per month; that in May 1993, they agreed that the child support and alimony would be paid in full by a lump sum payment of $10,000.00; in the alternative, that in May 1993, he delivered $10,000.00 to Sandra, that she had not returned that amount, and that he was entitled to an offset against any past, present, or future child support or alimony obligation; and, in the alternative, that in January 1993, they agreed, either expressly or impliedly, to reduce the child support to $250.00 per month and to reduce the alimony to $150.00 per month.
A hearing was held on the rule on July 9, 1996, following which the matter was taken under advisement. The trial court issued written reasons on November 19, 1996, finding that Romaine began living with Rodlin in February 1993, and, as a result, Rodlin was entitled to a credit thereafter towards the amount of child support he was originally ordered to pay. The trial court determined that from February 1993, through September 1996, Rodlin's child support obligation totaled $275.00 per month along with the $250.00 per month in alimony for a total of $11,311.00 in arrearages through the date its written reasons were issued. With regards to the $10,000.00 payment, the trial court held that this was a gift to Sandra and the children, thus, Rodlin was not entitled to a credit against his arrearages. Finally, the trial court awarded Sandra $1,500.00 in attorney's fees. A judgment was signed on December 16, 1996. Rodlin filed a motion for a new trial, which was denied. This appeal followed.

ISSUES
On appeal, Rodlin asserts five assignments of error:

*1082 1) The trial court erred in finding the $10,000.00 payment a gift.
2) The trial court erred in refusing to give him a credit for the $10,000.00.
3) The trial court erred in refusing to give him credit for cash payments he made to Sandra.
4) The trial court erred in accumulating the arrearages for the child support through the date of the written reasons, thus accumulating payments which would have become due after the date of the trial.
5) The trial court erred in awarding Sandra attorney's fees.

LAW
On review, an appellate court will not set aside a trial court's finding of fact in the absence of manifest error, or unless the finding is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue before the court is not whether the trier of fact was right or wrong but, rather, whether its conclusions were reasonable. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). Thus, in order to reverse a trial court's finding of facts, an appellate court must first determine, after reviewing the record in its entirety, that a reasonable factual basis does not exist for the finding and that the record establishes that it is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). Even if the court feels that its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review if conflict exists in the testimony. Id. Where two permissible views of evidence exist, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973). However, if the appellate court determines that a "reversible error of law or manifest error of material fact was made in the trial court, it is required, whenever possible, to redetermine the facts de novo from the entire record and render a judgment on the merits." Ferrell v. Fireman's Fund Ins. Co., 94-1252, p. 4 (La.2/20/95); 650 So.2d 742, 745, on remand, 92-2116 (La.App. 4 Cir. 7/31/96); 680 So.2d 690.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
In reviewing the record, we find that the trial court erred in finding the $10,000.00 payment a gift. In its findings, the trial court stated that it was "not convinced the parties's (sic) actions or testimony that they intended to alter this Court's order of 1992. This Court can only conclude this amount was a gift to petitioner and the children. This amount will not be considered in any credit due defendant." We find this conclusion by the trial court was manifestly erroneous since there was no evidence indicating that the money was intended as a gift. Rodlin testified that the amount was intended as a lump sum payment for child support, while Sandra claimed it was intended to pay off community debts. As a result of this manifest error, we will conduct a review of the record and render a judgment on the merits.
A parent's duty of support is a legal duty which cannot be renounced or suspended. Dubroc v. Dubroc, 388 So.2d 377 (La.1980). However, the general rule is that a judgment awarding child support remains in effect until the party ordered to pay support has the judgment modified or terminated by a court, or until the parties have entered into a conventional obligation which extrajudicially modifies the child support award. Goss v. Goss, 95-1406 (La.App. 3 Cir. 5/8/96); 673 So.2d 1366. In order to prove a modification through an agreement, the party claiming such must clearly prove that the agreement meets the requisites of a conventional obligation, and that it does not interrupt the child's maintenance or upbringing or otherwise work to his/her detriment at the time it was made. Trisler v. Trisler, 622 So.2d 730 (La.App. 1 Cir.1993).
In order to decide this issue, we feel that a review of the circumstances and testimony presented at the hearing on the rule is necessary. A complete recital follows.
Prior to filing for a divorce, Rodlin testified that he and Sandra sought legal advice from a family friend, Gene Thibodeaux.[1] *1083 Rodlin further testified that they had already agreed that he would pay child support of $400.00 per child, but that Judge Thibodeaux suggested they designate $250.00 of the child support as alimony for tax purposes. The divorce was then obtained by Sandra through a different attorney. After the divorce was granted, Rodlin stated that he paid $800.00 for the first month's child support. In February 1993, he reduced this amount to $400.00 because Romaine had moved in with him in January. He stated that he paid this amount the next two months until May 1993, when Sandra told him that, in exchange for $10,000.00, she would release him from his child support obligation. Rodlin testified that he borrowed the amount from two credit unions and presented Sandra with a cashier's check. Thereafter, he made no payments to Sandra until October 1993. He testified that at that time he learned Sandra had spent all of the money, and she threatened to take him to court if he did not resume his child support payments. Rodlin stated that he did so only to ensure that his daughter did not suffer. He testified that he paid $400.00 per month until the present rule for contempt was filed on January 10, 1996, as a result of a late payment.
Sandra countered by denying that they agreed to anything other than what was contained in the stipulated judgment. Although she admitted that Romaine lived with Rodlin for one year, she denied reducing his child support obligation during that time. Sandra further testified that the $10,000.00 was given to her by Rodlin so that she could pay off debts of the community. To bolster this claim, she introduced checks totaling $8,228.31 and testimony that she paid $1,771.69 in cash towards their community obligations.
On cross-examination, Sandra admitted that Rodlin timely paid $400.00 each month until December 1995, when he was fifteen days late. At that time Sandra filed the present rule for contempt. She stated that she never requested the remaining $400.00 awarded under the stipulated judgment because she was trying to maintain a relationship between Rodlin and herself. Sandra testified that Romaine lived with Rodlin for a few months in 1993, for a short while in 1994, and then for a few months in 1995, but stated that his primary domicile was with her in 1995. She testified that Romaine turned eighteen in April 1995. When asked why Rodlin claimed Romaine as a dependent on his tax return, even though the stipulated judgment was silent on this issue, she stated that they had a verbal agreement that he would claim Romaine and she would claim Ronotta.
In an interrogatory, Rodlin asked Sandra to list all other payments made by him, which were not included as child support and alimony, which exceeded $45.00, and which were made after December 11, 1992. In response, Sandra answered that he had made no payments to her other than child support and alimony. When asked why she did not list the $10,000.00, Sandra explained that she did not "think it was a payment that he gave me." She further stated that she had no evidence other than the canceled checks to show that the obligations she paid were, in fact, community obligations. Sandra testified that she and Rodlin had not partitioned their community property, but stated that she received the mobile home, its contents, and the one acre lot it sat on, while Rodlin received two automobiles. She stated that the money given to her by Rodlin was mainly used to pay off the mobile home.
Romaine testified that he only lived with Rodlin for one year after the divorce, but admitted that he listed Rodlin's home address as his home address on documents dated in September 1993 and 1994, and on a Walgreens' employment application. He further admitted that he did not have a good relationship with his father as a result of an argument and that he hoped his mother would win. Also testifying on this issue were Randy Guillory, Rodlin's brother, and Lisa Duhon, Rodlin's landlord. Randy testified that Romaine lived with Rodlin during 1993, *1084 1994, and 1995, and Duhon, who had lived in an apartment across from Rodlin, testified that Romaine moved in three to four weeks after Rodlin did and lived with him until Rodlin moved out in January 1995.
Judge Thibodeaux testified that both Rodlin and Sandra approached him in 1992, seeking advice on obtaining an amicable divorce. He stated that Rodlin indicated that they had agreed on all of the issues and that he would pay $800.00 in child support, which would be reduced when the eldest child reached eighteen years of age. Judge Thibodeaux testified that he suggested they designate $250.00 of the $800.00 as alimony for tax purposes.
After thoroughly reviewing the record, we find that Rodlin's testimony is more credible than Sandra's. Sandra testified that the only agreement between her and Rodlin was contained in the stipulated judgment of December 11, 1992. Rodlin claimed that they agreed he would pay $400.00 per child per month. He testified, as was confirmed by Judge Thibodeaux, that $250.00 was designated as alimony for tax purposes only. Judge Thibodeaux further confirmed that the parties intended that the child support would be on a per child basis instead of an in globo amount. We further find that acceptance of the agreement can be inferred from Sandra's actions. When Romaine moved in with him in January 1993, Rodlin reduced the child support payments by half. Sandra failed to complain about the reduction until she filed the present rule for contempt in January 1996. Finally, despite testifying that there were no other agreements between Rodlin and herself other than in the stipulated judgment, Sandra admitted that they had a verbal agreement whereby Rodlin claimed Romaine as a dependent on his tax forms and she claimed Ronotta. Thus, we find Sandra's testimony on this issue is not credible.
Sandra next testified that Romaine lived with Rodlin for only one year. Although both Romaine and Sandra testified the same, the evidence proves otherwise. Exhibits introduced into the record show Romaine's home address from 1993 until at least early 1995 as that of Rodlin's. Documents introduced from the Calcasieu Adult Education Learning Center, dated September 13, 1993, and September 16, 1994, list Romaine's home address as 127 East Street # 6, Rodlin's address, and states that Rodlin was to be contacted in case of an illness. A release of information form dated September 9, 1994, authorized the Learning Center to release information concerning Romaine to Rodlin. A Walgreens' employment application lists Romaine's home address as 1516 Sage Drive in Lake Charles. This application is undated, but that is the same home address listed on Rodlin's checks submitted to Sandra for child support in 1995 and 1996. There was also the testimony of Duhon, an impartial witness, who stated that Romaine lived with his father during the entirety of 1993 and 1994. Thus, we find, as did the trial court, that Sandra's testimony on this issue was not believable.
Finally, Sandra testified that the $10,000.00 payment from Rodlin was intended to pay off community obligations instead of child support. However, she testified through an answer to an interrogatory, which was given under oath, that Rodlin made no payments to her other than child support and alimony which exceeded $45.00 and occurred after December 11, 1992. Her only explanation for why she did not list the $10,000.00 was that she did not consider it a payment to her by Rodlin. In addition, we find Sandra's actions after receiving the money indicative of a finding that it was intended as child support. Rodlin paid Sandra the $10,000.00 in May 1993. We note with suspicion that Sandra did not seek legal action to compel Rodlin to pay child support when he did not resume those payments until October 1993, approximately five months later, as she did in the present action after he was only fifteen days late in making payment. We find this especially noteworthy since her own computation of sums due and paid since their divorce shows that she received no child support or alimony from Rodlin for approximately seven months, between February and October 1992. Finally, although Sandra testified that she used the money to pay off community debts, three of the checks she introduced into evidence were dated prior to the time she received the *1085 money; and two of the checks were dated August 12, 1993 and September 17, 1993, approximately four and five months after she received the money. No evidence, other than her own testimony, was introduced to prove that she paid $1,771.69 in cash on community obligations. Thus, we find Sandra's testimony on this issue also not credible.
Considering the foregoing testimony and evidence, we find that Rodlin has clearly proven that the parties entered into a conventional obligation whereby they agreed to modify the terms of the December 11, 1992 stipulated judgment through the payment of $10,000.00. In fact, we find that three agreements existed which modified the stipulated judgment. The Guillorys first agreed to modify the stipulated judgment when they agreed that the child support would be $400.00 per child per month. This was borne out by Judge Thibodeaux's testimony. The next agreement occurred when Rodlin reduced his child support obligation to $400.00 per month after Romaine moved in with him. Although Rodlin testified that there was no specific agreement pertaining to the reduction, the evidence proves that there was an implied agreement, especially since we have already found that the parties intended the child support to be awarded on a per child basis and not an in globo amount. The final agreement occurred when Sandra relieved Rodlin of his child support obligation upon the payment of $10,000.00. Although a parent may not suspend or renounce his legal duty to pay child support, we find that this agreement did not interrupt Romaine's or Ronotta's maintenance or upbringing or otherwise work to their detriment at the time it was made, since Romaine was living with Rodlin and Rodlin resumed his child support payments five months later. Since the only way to satisfy an obligation to pay child support is to pay the party to whom it is awarded, and since Rodlin paid Sandra $10,000.00, we find that he is entitled to a credit in that amount towards any arrearages owed by him. Byrd v. Byrd, 617 So.2d 182 (La. App. 3 Cir.1993).

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, Rodlin argues that the trial court erred by refusing to grant him a credit for cash payments of child support he made to Sandra. Although Sandra denied that Rodlin made any cash payments, he points out that in response to an interrogatory requesting her to list the total amount of child support and alimony he had paid to her since the judgment of divorce, Sandra computed that he had paid half of an accrued $22,400.00, or $11,200.00. When asked at the hearing why she now changed her story and denied that he paid her amounts that he did not have checks for, Sandra replied that she had not changed her mind. Instead, she merely replied that she decided it was unnecessary for her to go that far back.
According to an exhibit introduced by Rodlin, the total amount of child support payments made by him between December 1992 and June 1996, including cash payments of $1,711.00 and the $10,000.00, was $24,900.00. The computation introduced by Sandra is essentially a reproduction of Rodlin's list, minus the $10,000.00, the cash payments, and some other payments. Considering our finding with regards to Sandra's credibility, and taking into account her response to the interrogatory, where she indicated that Rodlin had paid half of the accrued amount of child support and alimony, we find that the trial court erred by not giving Rodlin a credit for his cash payments of $1,711.00.

ASSIGNMENT OF ERROR NUMBER FOUR
In his fourth assignment of error, Rodlin claims that the trial court erred by accumulating his arrearages through the date of its written reasons, November 18, 1996, instead of through the date of the hearing on the rule for contempt, July 9, 1996. In its written reasons for judgment, the trial court determined that Rodlin's child support and alimony obligations included payments from July 1996 through November 1996, the period for which the matter was under advisement. The total amount that the trial court found Rodlin liable for did not *1086 include a credit for any amounts that he might have paid after the hearing. Thus, the trial court erred in including payments due after July 9, 1996. The amount of child support that Rodlin should have paid from January 1, 1993 through July 1, 1996 is $17,600.00. Rodlin has made child support payments of $13,189.00 in checks and $1,711.00 in cash. He is further entitled to a credit for the $10,000.00 payment he made to Sandra in May 1993. Thus, Rodlin is entitled to a credit of $24,900.00 against his child support obligations. This leaves him with a credit of $7,300.00 against any future child support he owes.

ASSIGNMENT OF ERROR NUMBER FIVE
In his final assignment of error, Rodlin claims that the trial court erred by awarding $1,500.00 in attorney's fees to Sandra. He argues that his payment of $10,000.00 to Sandra constituted "good cause" under La.R.S. 9:375, such that he should not have been cast with attorney's fees.
La.R.S. 9:375 provides that "[w]hen the trial court renders judgment in an action to make executory past-due payments under a... child support award ... it shall, except for good cause shown, award attorney's fees and costs to the prevailing party." Based on our foregoing findings, we find that "good cause" was shown by Rodlin. Thus, the judgment of the trial court awarding attorney's fees is reversed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of the defendant-appellant, Rodlin James Guillory, finding that he is entitled to a credit of $7,300.00 against his future child support obligations. The costs of this matter are assessed to the plaintiff-appellee, Sandra Guillory.
REVERSED AND RENDERED.
NOTES
[1] Judge Thibodeaux was elected to the Third Circuit, Court of Appeal, following this meeting. In his deposition, he stated that Rodlin and Sandra did not return to him after their initial meeting. By the time they obtained their divorce in December 1992, he had been elected to the bench and was unable to practice law.