I, JONES, J.
Plaintiff/appellant, State of Louisiana, appeals the judgment of the trial court granting a reduction in child support payments in favor of the defendant, Ruben Brown. The State also appeals the trial court’s decision to make the reduction in payments retroactive to the date of the defendant’s initial filing for a reduction in child support payments, December 1994. We amend the judgment and affirm as amended.

FACTS

Ruben Brown and Darlene Lewis Brown were married on November 30, 1975, and from their union three children were born, namely Ruben Brown, Corey Brown, and Ashley Brown. On April 13, 1993, the plaintiff, Darlene Lewis Brown, filed a Petition for Divorce, requesting child support, custody, managerial authority over the community assets, and a permanent injunction.[1] On May 4, 1993, the trial court entered an interim order compelling Mr. Brown to pay child support in the amount of $1,109.[2]
[2On November 16, 1993, Mr. Brown filed a Rule to Decrease Child support. However, there is nothing in the record to indicate that the trial court ruled on Mr. Brown’s rule for a reduction. On April 6, 1994, the State of Louisiana enrolled in this suit for the purpose of enforcing the child support order, and to collect and distribute child support payments to Darlene Lewis Brown.[3] The State then executed another income assignment order on April 7, 1994, relative to the child support arrearages currently pending.
However, on April 22, 1994, Ms. Dreola Guyton, the attorney of record for Mrs. Brown filed a rule for contempt, attorney’s fees, costs, and to make prior child support arrearages executory against Mr. Brown. In response, Mr. Brown filed a rule for a reduction in child support in November 1994. A hearing for both rules was continued until November 30, 1994. Following the hearing, the trial court found Mr. Brown in contempt, calculated the arrear-ages to be $14,703.42, imposed a five-year suspended sentence for failure to pay child support, and the trial court ordered Mr. Brown to pay $500 towards his arrearages. Additionally, the trial court denied Mr. Brown’s motion to reduce child support. The judgment was rendered on December 5,1994.
Prior to the rendering of the judgment on December 5, 1994, Mr. Brown filed a second motion for reduction in child support payments on December 2, 1994. The trial court scheduled a hearing on this *40 motion for February 1, 1995. Mr. Brown also filed a request for notice on December 9, 1994, asking to be informed of any dates for hearing or trials, and to be informed of any orders, rules 13or judgments related to the instant matter. Ms. Janet Ahern, counsel for Mr. Brown, filed both pleadings.
On August 31, 1995, the State filed its first rule for contempt against Mr. Brown. The State requested that all arrearages currently pending be made executory, and that another income assignment order be ordered. The trial court scheduled the State’s rule for January 19, 1996. However, the trial date was reset to December 22,1995, on the State’s motion.
On December 1, 1995, Mr. Brown’s mother was served with a copy of the State’s Motion to Reset Hearing. On the day of trial, both named parties were present; however, Mrs. Brown was the only party represented by counsel. Following the trial, the court entered its judgment finding Mr. Brown in arrears in the amount of $29,120.42 as of December 18, 1995. The trial court ordered a third income assignment order, made all arrearag-es executory, and further ordered Mr. Brown to pay $200 in attorney fees pursuant to LSA-R.S. 9:315. There was nothing in the judgment to reflect that Mr. Brown’s December 2, 1994 rule to reduce was entertained in this hearing. According to the record, no contempt order was issued pursuant to the contempt rule.
On May 17, 1996, the State filed its second rule for contempt against Mr. Brown, and the trial court scheduled the matter to be heard on July 19, 1996. However, there was no indication in the record that a hearing was held on that date.
On December 10, 1996, the State filed a rule to revoke any and all licenses in Mr. Brown’s possession, and the trial court scheduled the matter to be heard on April 25, 1997. Mr. Brown’s son was served with a copy of a “rule” on January 15, 1997; however, the service sheet used by the Orleans Parish Civil Sheriff only indicates that the rule to revoke Mr. Brown’s licenses was served.
14Notwithstanding domiciliary service, Mr. Brown was not present for trial on the rule to revoke on April 25, 1997. Therefore, the trial court issued an attachment for Mr. Brown, calculated his arrearages to be 43,914[4], issued a fourth income assignment order, and ordered Mr. Brown to pay $250 in attorney fees.
Finally, the State filed its third rule for contempt against Mr. Brown on January 13, 1998. Though a hearing on this rule was set for February 6, 1998, Mr. Brown moved to have the matter reset to February 20, 1998. He also moved to have the trial court hear the December 2, 1994 rule to reduce child support on the same date.
Following a hearing on both rules, the trial court granted Mr. Brown’s rule for reduction, recalculated the monthly child support payments, ordered Mr. Brown to pay $84 towards his arrearages, and made the reduction retroactive back to the date the second rule to reduce was filed (December 2, 1994). The judgment was signed on March 10, 1998. In its reasons for judgment, the trial court granted Mr. Brown’s rule to reduce because it found that there was a substantial change in Mr. Brown’s income at the time the December, 1994 rule was filed. Further, the trial court found that Mr. Brown’s eldest child had reached the age of majority, and that Corey Brown’s disability payments should be calculated as income to the child. From this ruling, the State of Louisiana appeals. The State assigns as error the trial court’s finding that adequate notice had not been received, the trial court’s decision to grant the motion to reduce child support, and its failure to set child *41 support according to the child support guidelines pursuant to LSA-R.S. 9:315.

\ .ADEQUATE NOTICE

In its assignment of error, the State contends that Mr. Brown received adequate notice of the contempt hearing scheduled after the filing of Mr. Brown’s second motion to reduce, which was filed in December 1994. We disagree.
It is well-settled jurisprudence that adequate notice is one of the most elementary requirements of procedural due process. See Parish of Orleans, Civil District Court Rule 10; Howard v. A & M Const. Co., 93-1013 (La.App. 1 Cir. 4/29/94), 637 So.2d 575; citing Hicks v. Schouest, 381 So.2d 977 (La.App. 4 Cir. 1980). Therefore, it is the trial court’s responsibility to not proceed against a litigant when either the litigant or his attorney has not received adequate notice of the pending trial in writing. Jones v. U.S. Fidelity, 596 So.2d 834 (La.App. 4 Cir. 1992). (Emphasis added).
Moreover, once a rule for contempt has been filed against a party for failure to pay child support, the party against whom the rule has been filed is entitled to contest the rule in a contradictory hearing. See LSA-C.C. P. art. 225; see also State v. King, 97-1249 (La.App. 3 Cir. 3/6/98), 707 So.2d 1374. The purpose of the hearing is to allow the trial court the opportunity to discern whether the party’s failure to pay child support was done intentionally, knowingly, purposefully, and without justification. See Reeves v. Thompson, 95-0321 (La.App. 4 Cir. 12/11/96), 685 So.2d 575.
In the case sub judice, the trial court stated in its reasons for judgment that it rendered its decision based on the fact that the State “failed to provide notice to counsel for Mr. Brown for any hearing subsequent to the filing of the Request for Notice.” Mr. Brown reiterates the fact that he did not receive adequate notice in his appellate brief. In support of his argument, Mr. Brown contends that he was | «found in contempt when he was either not present for the contempt hearing or present without counsel. Furthermore, he contends that the clerk of court should have given written notice to his attorney rather than to him.
We have previously recognized that service on the litigant’s attorney is sufficient notice to the litigant; however, we cannot say that service is now insufficient or inadequate if service is made on the litigant rather than his attorney of record. See LSA-C.C.P. art. 1235; cf. Grantham v. Dawson, 27,798 (La.App. 2 Cir. 1/24/96), 666 So.2d 1241, writ denied 96-0487 (La.3/29/96), 670 So.2d 1228.
The record reflects that Mr. Brown was served by domiciliary service. Although there was no indication in the record that Mr. Brown waived service or formally discharged his attorney, we find that service made on Mr. Brown[5], the litigant, for the hearing scheduled after the filing of his December 1994 rule to reduce was proper.
Further, we note that in order for the trial court to find a party in constructive contempt, it must ascertain from the evidence presented at the contradictory hearing whether the party against whom the rule was filed intentionally and knowingly violated the trial court’s order or judgments. See LSA-C.C.P. arts. 221, 224; Pittman Const. Co., Inc. v. Pittman, 96-1079 (La.App 4 Cir. 3/12/97), 691 So.2d 268, writ denied 97-0960 (La.5/16/97), 693 So.2d 803. (Emphasis added). Though the trial court is vested with great discretion when ruling on the contempt motion, it must consider the evidence in its totality when making its ruling. Alagdon v. Guertin, 97-0235 (La.App. 4 Cir. 10/1/97), 701 So.2d 480, writ denied 97-2400 *42 (La.12/12/97), 704 So.2d 1201. Evidently, the trial court |7concluded, after reviewing the record[6], that the contempt judgments rendered after Mr. Brown filed his December 1994 rule to reduce were in error because of inadequate service and a lack of evidence. Thus, we find that the trial court committed error in concluding that the State failed to provide notice to Mr. Brown for any hearing subsequent to the filing of his motion to reduce in 1994.

MOTION TO REDUCE MADE RETROACTIVE TO 1994

The State argues that it was error for the trial court to grant Mr. Brown’s motion to reduce, and the State also complains that it was manifest error to make the reduction retroactive to 1994. Mr. Brown argues that the reduction was proper considering that pertinent information regarding his income and the income of his son, Corey Brown, was not taken into account before the trial court found him in contempt. We disagree.
The trial court’s decision to reduce child support payments and make the reduction retroactive to the date of filing is mandated by statute. See LSA-R.S. 9:310(A). However, the reduction is automatically retroactive unless the trial court finds good cause for not doing so. See LSA-R.S. 9:310(C); see also Langley v. Langley, 96-0414 (LaApp. 4 Cir. 9/18/96), 681 So.2d 25, writ denied 96-2489 (La.12/6/96), 684 So.2d 935. Thus, a finding of good cause is only required before making the reduction prospective. Therefore, it follows that the trial court need not articulate its reasons for making the reduction in child support retroactive before the judgment becomes valid. Id. Because the trial judge is given great latitude in either granting or modifying awards of alimony or child support, we will | snot be set aside or amended his judgment unless a clear abuse of that discretion is shown. LaForge v. LaForge, 26,317 (La.App. 2 Cir. 1/25/95), 649 So.2d 151.
The record indicates that Mr. Brown filed his motion to reduce in December 1994, and that no action was taken on this rule until 1998. At that time, Mr. Brown testified and provided the trial court with information concerning a substantial change in his income.
In essence, Mr. Brown testified that in December 1994, he was working as a mechanic in a mechanic shop earning $125 per week. However, he only worked in this position for four months because he was working as an uncertified mechanic. In April 1995, Mr. Brown began working at a junkyard removing gas tanks from junk cars for $40 per day. In August 1995, Mr. Brown worked at Lafitte Welding Company earning $6 per hour, and it was from this employment that Mr. Brown’s wages were garnished by the State for child support. He worked at Lafitte Welding Company until November 1996, at which time he began working at Max Welding earning the same rate of pay as he did with Lafitte Welding. Mr. Brown was also garnished while working at Max Welding.
In March 1997, Mr. Brown worked as a production operator with Fab Con, his current employer as of the date of trial. He earned $12.50 per hour, but only worked every other week at 84 hours per week. Mr. Brown testified that the State consistently garnished his wages from August 1995 to the date of trial, and to his knowledge all proceeds were given to Mrs. Brown. Mr. Brown also testified that his second eldest child, Corey Brown, receives approximately $444 in Social Security Income for a small-structure disability his son has had since birth.
Mrs. Brown testified that she did not receive regular payments from Mr. Brown until the State began garnishing his wages. *43 Further, Mrs. Brown testified |3that when she did receive child support payments, they ranged from $325 to $900, but did not conform to the child support order which required monthly payments in the amount $1,109. Mrs. Brown also testified that her salary with the Sewerage and Water Board has remained relatively the same since Mr. Brown filed his motion to reduce child support payments in December 1994. She verified that Corey Brown does receive SSI payments in the amount $440, but clarified that his SSI payments are dependent on what her son receives in child support from Mr. Brown.
Ms. Tamika Smith, the custodian of child support records for the Child Support Division at the Orleans Parish District Attorney’s Office, testified Mr. Brown had a monthly child support obligation in the amount of $1,109, and that his arrearages totaled $52,988.67. Though ■ Ms. Smith’s records did show that consistent payments were credited to Mr. Brown’s account, she also testified that all payments were in conjunction with a garnishment. Additionally, Ms. Smith testified Mr. Brown has paid a total of $4,679.33 on his account since November 1994.
There is nothing in the record to indicate that the trial court used any external information to establish the parties’ income or Mr. Brown’s arrearages before finding Mr. Brown in contempt. Apparently, the records of income relied upon by the trial court were the records provided by the State. Also, we note that the record is silent as to whether the trial court entertained arguments regarding how to calculate Corey Brown’s social security income into the child support obligation. Further, the trial court did not take into account what payments Mr. Brown had already made when the State filed its rule for contempt in 1995. Thus, |inthe trial court’s decision to credit Mr. Brown for the payments that were received was proper.
Additionally, the State argues that the trial court erred in altering the previous contempt rulings because its contempt rulings were final, appealable judgments, which the defendant chose not to appeal. We agree.
A contempt judgment is interlocutory in nature and is subject to an appellate court’s supervisory jurisdiction; however, if the party appealing such judgment can show irreparable harm from this judgment then the reviewing court’s appellate jurisdiction can be enforced. See LSA-C.C.P. arts. 1841 and 2083; of. Wellmeyer v. Western Reserve Life Assur., 94-937 (La.App. 5 Cir. 8/30/95), 663 So.2d 745. See LSA-Const. Art. 5, § 10(A). However, we review judgments regarding child custody and support differently. [T]he jurisprudence in this [SJtate is well settled that [judgments granting custody and alimony for their support] are never final, being subject to modification by the judge in summary proceedings instituted by either party. Tutorship of Shea, 619 So.2d 1236 (La.App. 3 Cir.1993), writ denied 626 So.2d 1165 (La.1993); citing Davis v. Davis, 238 La. 293, 115 So.2d 355 (1959). (Emphasis added).
In making the motion to reduce retroactive to 1994, the trial court, in effect, overruled the previous contempt rulings entered against Mr. Brown. Thus, if Mr. Brown desired to contest the trial court’s judgment regarding contempt for nonpayment of child support, then the proper procedural vehicle would have been to file a motion to reduce the child support award. See LSA-R.S. 9:311; State Thru Dept. of Social Services, Office of Family Support in Interest of Seals v. Seal, 97-1508 (La.App. 4 Cir. 10/29/97), 701 So.2d 746. Though Mr. Brown’s actions were in compliance with the statute; he did not appeal those judgments. In Hence, those judgments became final. Therefore, in light of LSA-R.S. 9:310(C), we amend the trial court’s judgment to make the granting of the motion to reduce prospective only.
*44 Additionally, we'find no error by the trial court in classifying the social security disability income as income to Corey Brown — thus crediting Mr. Brown’s arrearages accordingly. The trial court, in calculating the basic child support obligation, may consider a minor’s income. See LSA-R.S. 9:315.7. (Emphasis added). Likewise, the manner in which the trial court decides to compute the minor’s income is also discretionary. See Phillips v. Phillips, 95-2043 (La.App. 1 Cir. 5/10/96), 673 So.2d 333; cf. Corley v. Corley 600 So.2d 908 (La.App. 4 Cir.1992).

DEVIATION FROM CHILD SUPPORT GUIDELINES

The State further argues that it was error for the trial court to deviate from the guidelines when it decided to recalculate child support. We disagree.
In order to deviate from the child support guidelines, the record must contain oral or written reasons for the deviation, which must be supported by the evidence presented to the trial court. See LSA-R.S. 9:315.1(B); see also McDaniel v. McDaniel, 95-1314 (La.App. 3 Cir. 3/6/96), 670 So.2d 767. This Court recognizes that deviations are appropriate when the trial court fairly articulates for the record those reasons for disregarding the guidelines. See Goldberg v. Goldberg, 96-2145 (La. App. 4 Cir. 7/23/97), 698 So.2d 63; see also Broussard v. Broussard, 617 So.2d 1187 (La.App. 4 Cir.1993).
In its reasons for judgment, the trial court chose to deviate from the guidelines because Mr. Brown’s testimony established that there was a substantial change in his income, and that Corey Brown was receiving income in the form of Insocial security disability payments. Further, the trial court determined that one of the three children was no longer eligible for child support. Additionally, the trial court found that Mr. Brown had the earning capacity of $12.00 per hour, which is the amount the trial court used as income for Mr. Brown’s child support obligation. Hence, we find no error in the trial court’s decision to deviate from the child support guidelines.

REMAND ON THE ISSUE OF HEALTH INSURANCE

In the alternative, the State argues that this Court should remand this matter to the trial court to have an evidentiary hearing because the trial court in its judgment did not address the issue of health insurance coverage.
Generally, remands are not favored when the record is complete, and all of the relevant facts to the issue complained of are before the reviewing court. Snia v. United Medical Center of New Orleans, 93-2367 (La.App. 4 Cir. 5/26/94), 637 So.2d 1290, unit denied 94-1653 (La.10/7/94), 644 So.2d 637. However, a remand is proper when additional evidence is needed for the reviewing court to rule or a party claims that the judgment is defective because a pertinent issue was not addressed. Willett v. Premier Bank, 97-187 (La.App. 3 Cir. 6/4/97), 696 So.2d 196.
In the interest of justice, we remand this matter to the trial court for an evidentiary hearing on the issue of health insurance coverage since the trial court did not initially address this issue.
| ^DECREE
For the foregoing reasons, we amend the judgment of the trial court to make the reduction in child support prospective only, and affirm as amended.
Further, we remand this matter to the trial court for an evidentiary hearing on the issue of health insurance coverage. All costs are assessed against the State of Louisiana.

AMENDED AND AFFIRMED AS AMENDED; AND REMANDED.

*45 PLOTKIN, J., Dissents in Part and Concurs in Part with Written Reasons.
MURRAY, J., Concurs in Part and Dissents in Part, with Reasons.
| PLOTKIN, J. Dissenting in Part and Concurring in Part with Written Reasons.
For the reasons assigned by J. Murray in her partial dissent, I dissent from the majority decision to the extent it affirms the trial court’s reduction of Mr. Brown’s child support obligation to $816 per month. As J. Murray notes, the record evidence is insufficient to support that reduction. Moreover, the trial court failed to provide reasons for its deviation from the child support guidelines established by LSA-R.S. 9:315. I further agree with J. Murray’s conclusion that Mr. Brown is not entitled to a credit for the amount of SSI benefits received by his son, Corey. Finally, I agree with J. Murray’s concerns regarding the accumulation of arrearage judgments against Mr. Brown. I would remand to the trial court for another hearing to determine the correct amount of reduction to which Mr. Brown is entitled, and for recalculation of the arrearage judgments against him.
I concur in the majority’s decision to the extent it finds that any reduction in Mr. Brown’s child support obligation may be applied prospective only from the date of the judgment. I write separately on that issue only to clarify my reasons for believing that the trial court improperly made the previous reduction retroactive to the date Mr. Brown filed his second motion to reduce on December 2,1994.
I would frame the primary issue in this case as follows: Can a successor (or different) trial judge act as an appellate judge and reverse or modify a contempt | {.judgment and judgments setting arrear-ages on child support previously rendered by predecessor judges on the same court? The answer to that question, I believe, is “no.”
Mr. Brown filed his second motion to reduce his child support obligation on December 2, 1994. Thereafter, two different Civil District Court judges on three different occasions — December 5, 1994, December 22, 1995, and April 25, 1997 — issued judgments making past due child support executory and calculating the arrearages owed by Mr. Brown. The December 5, 1994 judgment also held Mr. Brown in contempt of court and imposed a five-year suspended sentence for failure to pay child support. As the majority finds, Mr. Brown was either properly served with notice of the hearings or actually appeared at the hearings that preceded each of the three judgments.[1] At no time during this period did Mr. Brown pursue his December 2, 1994, motion to reduce. As the majority notes, those judgments became final when Mr. Brown failed to timely seek supervisory writs.
Then, more than three years after the motion was filed, Mr. Brown approached a different trial judge, seeking a hearing on his motion to reduce. That successor judge found, based on the evidence before him, that Mr. Brown was entitled to a reduction. Like the majority, I believe that the trial judge erred when he chose to follow the general rule that changes in child support obligations should be made retroactive to the filing of the motion to modify. See LSA-R.S. 9:310(A). I believe that the trial court abused its discretion in making the award retroactive in this case.
In Langley v. Langley, 96-0414 (La. App. 4 Cir. 9/18/96), 681 So.2d 25, writ denied, 96-2489 (La.12/6/96), 684 So.2d 935, this court held that a trial judge must find good cause in order to make a child support award prospective only, in derogation of the general rule established by LSA-R.S. 9:310(A), (C) that|schild support awards be retroactive to the date of filing. *46 We reversed a trial court judgment making a reduction in child support prospective only both because the trial judge failed to find good cause for making it prospective only and because the record did not reveal such good cause. Id.
The instant case is easily distinguished from Langley. The good cause for making the reduction in child support prospective only in the instant case is readily apparent on the face of the record. In this case, the party seeking the modification failed to pursue the motion for more than three years, despite the fact that he attended at least two hearings on the child support issue. Mr. Brown’s failure to pursue the child support reduction motion within a reasonable period of time, despite the fact that three different judgments making ar-rearages of child support executory were issued, operates as a waiver of the right to a retroactive reduction. The good cause for making the child support reduction prospective only in this case is readily apparent from the record.
The successor judge also erred in that he essentially reversed a judgment by a predecessor judge holding Mr. Brown in contempt of court. Generally, “the court of record [is] the exclusive judge of a contempt committed against its authority and dignity.” Moity v. Mahfouz, 137 So.2d 513 (La.App. 3 Cir.), writ denied, 242 La. 625, 137 So.2d 514 (1961). As a result, even appellate courts are reluctant to find that a trial court improperly held a party in contempt. Such judgments are reversed only on a strong showing of abuse of discretion. Boes v. Boes, 98-0342, 98-0618 (La.App. 5 Cir. 11/25/98), 722 So.2d 1080, 1081.
If appellate courts, which are statutorily vested with supervisory jurisdiction over trial courts, are reluctant to interfere in a trial court contempt judgment based on the trial judge’s feeling that the dignity of his court has been breached, another judge on the same level in the same court should not be allowed to modify a ^judge’s contempt ruling. This is especially true when, as here, the successor trial judge failed to address the pivotal issue considered by appellate courts when modifying a contempt judgment — that is, whether the predecessor judge’s contempt holding is reversible because he abused his discretion.

.A pleading styled "Motion and Petition For Injunction” was subsequently filed on October 12, 1993. This injunction requested that Mr. Brown be prohibited from disposing any funds that may come into his possession from his employer, Pennzoil Company. The permanent injunction was granted by the consent of both parties on December 14, 1994.

. On December 28, 1993, the trial court granted a judgment of divorce.

. Mrs. Brown was still represented by separate counsel (Dreola Guyton) at the time of the State’s enrollment.

. The trial court also entertained the State's rule for contempt which was filed on May 14, 1996, and the trial court calculated Mr. Brown arrearages following a hearing on the State’s Rule to Revoke the Defendant’s Licenses.

. In May 1993, Mr. Brown filed a Petition for Nullity, arguing that service was improperly made on him at his former address. Though the Orleans Parish Civil Sheriff continued service him at that address, he failed to contest service any further after May 1993.

. The record reflects that two other trial judges, as well as the presiding judge, signed the previous contempt rulings.

. I do not share J. Murray's concerns about the notice provided to Mr. Brown prior to the December 1995 and April 1997 hearings.