TERRI F. LOVE, Judge.
 

 11 This appeal arises from a contentious child custody dispute. The trial court awarded joint custody, designating the mother as the domiciliary parent and awarded child support. The father asserts that the trial court abused its discretion in designating the mother as the domiciliary parent and appeals. The mother asserts that she should be awarded retroactive child support, attorney’s fees, and court costs. We find that the trial court did not abuse its discretion in designating the mother as the domiciliary parent and affirm. We also find that the trial court did not abuse its discretion by awarding prospective child support and affirm.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Sharon Skinner (“Ms. Skinner”) filed a petition for divorce from David Watts (“Mr. Watts”), based on adultery, and sought child support, as well as a determination of child custody. Ms. Skinner and Mr. Watts agreed, in a consent judgment, to submit to an evaluation by a licensed, clinical psychologist in regards to determining child support. The consent judgment also provided that the children live with Mr. Watts for the 2005-2006 school year and with Ms. Skinner during the summer pending a resolution in child custody. During the 2006-2007 school year, the children resided with Ms. Skinner, except for a shot term in November |2when Mr. Watts refused to return the children to Ms. Skinner and enrolled the children in school in Mississippi. An interim consent judgment stated that Ms. Skinner would have the children during the 2007-2008 school year.
 

 Mr. Watts filed a reconventional demand seeking child support from Ms. Skinner. The trial court awarded joint custody with Ms. Skinner as the domiciliary parent and awarded $1,613.91 in child support to Ms. Skinner, which included half of the children’s medical expenses not covered by insurance and half the cost of braces for their daughter. The trial court also ordered Mr. Watts and Ms. Skinner to abide by its plan of implementation, attend co-parenting classes, and denied Ms. Skinner’s rule for contempt. Mr. Watts appealed asserting that the trial court abused its discretion by designating Ms. Skinner as the domiciliary parent. Ms. Skinner answered the appeal seeking that the child support be made retroactive and that she be awarded attorney’s fees and court costs.
 

 STANDARD OF REVIEW
 

 Child custody determinations made by the trial court are “entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion.”
 
 McKenzie v. Cuccia,
 
 04-0112, pp. 3-4 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 338.
 

 Factual findings shall not be set aside absent manifest error.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). “When the factual findings are based on the credibility of witness testimony, the appellate court must give great deference to the fact finder’s decision to credit witness testimony.”
 
 Kees v. Kees,
 
 08-0124, 08-0125, p. 7 (La.App. 4 Cir. 8/13/08), 992 So.2d 568, 571. To substantiate reversal, the appellate court must find from the record that there is no reasonable factual basis for the finding of the trial court and
 
 *858
 
 that the record establishes that the ^finding is clearly wrong (manifestly erroneous).
 
 Mart v. Hill,
 
 505 So.2d 1120, 1127 (La.1987).
 

 The award of child support is entitled to great weight and will not be disturbed unless an abuse of discretion of manifest error is present.
 
 Langley v. Langley,
 
 07-0754, p. 3 (La.App. 4 Cir. 3/26/08), 982 So.2d 881, 883. “[P]ublic policy is not offended by retroactive child support payments.”
 
 Nelson v. Nelson,
 
 08-85, p. 15 (La.App. 5 Cir. 6/19/08), 985 So.2d 1285, 1293.
 

 DOMICILIARY PARENT
 

 Child custody matters are governed by the best interest of the child. La. C.C. art. 131. In order to determine the custody arrangement that is in the child’s best interest, the court must consider all relevant factors, which include:
 

 (1) The love, affection, and other emotional ties between each party and the child.
 

 (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
 

 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
 

 (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
 

 (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
 

 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
 

 (7) The mental and physical health of each party.
 

 (8) The home, school, and community history of the child.
 

 (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
 

 (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
 

 (11) The distance between the respective residences of the parties.
 

 (12) The responsibility for the care and rearing of the |4child previously exercised by each party.
 

 La. C.C. art. 134. Additionally, the trial court “may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown,” which “shall be made by a mental health professional selected by the parties or by the court.” La. R.S. 9:331.
 

 The trial court ordered that the parties submit to a child custody evaluation by a psychologist, Dr. Beverly Howze (“Dr. Howze”). Dr. Howze spent five to six hours with each parent and administered tests, such as the Minnesota Multiphasic Personality Inventory II (“MMPI 2”). She also interviewed the children; Mr. Watts’ present wife; and Dr. Helen Stav-ros, who was Ms. Skinner’s social worker. In her evaluation she considered letters from family friends, investigative reports from private investigators, Mr. Watts’ journal, Ms. Skinner’s journal, reports cards, video tapes, audio tapes, pictures, and calendars. Dr. Howze stated that this provided her with subjective and objective data on which to base her child custody recommendation.
 

 Upon the completion of her evaluation, Dr. Howze testified that Ms. Skinner is an “intact person.” Dr. Howze stated that Ms. Skinner has situational issues with depression and the she had feelings of
 
 *859
 
 being “overwhelmed” at times, but sought help. Regarding the MMPI 2, Dr. Howze testified that while Ms. Skinner was anxious and nervous when taking the test, she produced a valid profile. Dr. Howze did not see any indications of substance abuse by Ms. Skinner. Ms. Skinner’s MMPI 2 reflected that she may have a “slowness to forgive and forget and her pattern has been associated with histories of marital struggles and divorce.” Dr. Howze wrote that the test revealed that Ms. Skinner’s problems may be nothing more than a “situational adjustment reaction.”
 

 |flDr. Howze indicated that Dr. Stavros, Ms. Skinner’s social worker who has also conducted appointments with the children, also stated that Ms. Skinner “operates as an intact person.” Dr. Stavros also noted that Ms. Skinner benefited from medication and appointments.
 

 As for Mr. Watts, Dr. Howze testified that he takes no blame for the dissolution of the marriage and blames everything on Ms. Skinner. She stated that he appeared insensitive to the needs of his children. Dr. Howze testified that Mr. Watts was so guarded that the MMPI 2 results had questionable validity. She also stated that Mr. Watts was very “emotionally distant.” Dr. Howze, after completing Mr. Watts’ interviews, stated that he “gives the clinical impression of operating under a burden of repressed anger.” Mr. Watts’ MMPI 2 indicated that he was “rigidly repressed and over-controlled” and “impatient of having his wishes frustrated.”
 

 Dr. Howze testified that this case represented “probably” the worst case of parental alienation she had ever seen. She stated that Mr. Watts alienated the children and that his present wife participated in the alienation. She further stated that the daughter appeared to be coached by Mr. Watts. Dr. Howze concluded that Mr. Watts’ description of Ms. Skinner was “slanted.” Additionally, Dr. Howze noted that she believed that Mr. Watts “would deny Mrs. Watts’ parental rights and that she would have difficulty in accessing the children.” Dr. Howze testified that the best way to ensure normal relationships with the children would be to have Ms. Skinner as the domiciliary parent because Ms. Skinner was not capable of that type of alienation. Dr. Howze noted that her recommendations were in the best interest of the children.
 

 Robert Menuet (“Mr. Menuet”), a licensed clinical social worker and board | (¡approved clinical supervisor, completed a child custody evaluation at the behest of Mr. Watts. Mr. Menuet conducted interviews with the children and family members, as well as reviewed medical records, the children’s school records, Mr. Watts’ journal and calendar, and letters from family friends. Mr. Watts’ medical records indicated a diagnosis of “Depressed, NOS, 311; Adjustment Disorder with mixed anxiety and depressed mood.” Ms. Skinner’s medical records demonstrated visits for anxiety, a couple of appointment cancellations, and an indication that she failed to take one medication regularly. Ms. Skinner had several varying diagnoses involving anxiety and depression. During her interviews, the daughter indicated that Ms. Skinner and her family often disparage Mr. Watts within the daughter’s earshot. When explaining why she would rather live with Mr. Watts, the daughter included that he takes her shopping more often than Ms. Skinner.
 

 Mr. Menuet examined the twelve factors included in determining the best interest of the child and concluded that both parents were equal as to many of the factors. As to the moral fitness of the parents, Mr. Menuet noted Ms. Skinner’s decision to introduce her children to her boyfriend. He commented about the fact that Ms.
 
 *860
 
 Skinner’s boyfriend spent the night at least twice when the children were present and noted that it “demonstrated poor social judgment.” In her testimony, Ms. Skinner indicated that both times were an accident. Mr. Menuet also took issue with Ms. Skinner’s “depression.” Mr. Menuet stated that Ms. Skinner “does not assume responsibility for understanding and managing her emotions.” .
 

 Mr. Menuet’s consulting psychologist, Dr. John Shaughnessy, conducted tests on Mr. Watts and Ms. Skinner. Mr. Watts scored “high average” on the IQ test and his MMPI 2 results indicated a lack of depression. Mr. Menuet interpreted Mr. Watts’ MMPI 2 as reflecting an “adequate regard and consideration for others” 17with a “flexible approach to interpersonal relationships” and “no over-sensitivity.” Ms. Skinner scored within the “average” range on the IQ test and her MMPI 2 indicated “mild depression, some worry, and pessimism.” As for the potential for substance abuse, Ms. Skinner was within the normal range on two of the scales and above average on the third scale. Mr. Menuet concluded that Mr. Watts should be the domiciliary parent and that Ms. Skinner would be likely to alienate her daughter by disparaging Mr. Watts.
 

 Mr. Watts contends that the trial court abused its discretion in designating Ms. Skinner as the domiciliary parent. He avers that
 
 Fernandez v. Pizzalato,
 
 04-1676 (La.App. 4 Cir. 4/27/05), 902 So.2d 1112, requires a reversal of the trial court. Mr. Watts’ emphasis is misplaced. In
 
 Fernandez,
 
 the trial court disregarded the only existing child custody evaluation, which it ordered. 04-1676, p. 21, 902 So.2d at 1125. Expert testimony is properly weighed by the trial court.
 
 Id.
 
 In the case
 
 sub judice,
 
 the trial court evaluated the recommendations given by both Dr. Howze and Mr. Menuet.
 

 The trial court stated in its reasons for judgment that both Mr. Watts and Ms. Skinner are “undoubtedly capable of providing the children with their basic needs, both materially and emotionally.” The trial court also noted that Ms. Skinner seeks mental health medical treatment when needed. However, the trial court found that Mr. Watts confuses “the children’s best interest with his own.” In regards to Mr. Watts’ alleged alienation of his daughter, the trial court stated that it was not intentional, but “a failure to recognize the harmful effects his choices have upon his children.” The trial court also found that “both parents are physically and emotionally able to care for the children.” However, having Ms. Skinner designated as the domiciliary parent will “aid in establishing a better relationship |sbetween” the daughter and Ms. Skinner.
 

 Given the juxtaposed recommendations given by Dr. Howze and Mr. Menuet and evidence in the record, we do not find that the trial court abused its discretion in designating Ms. Skinner as the domiciliary parent.
 

 RETROACTIVE CHILD SUPPORT
 

 Ms. Skinner contends that she should receive retroactive child support from the date of judicial demand, August 26, 2005. The record reflects that Mr. Watts began paying child support on December 1, 2006.
 

 A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
 

 La. R.S. 9:315.21. “Because the trial judge is given great latitude in either granting or modifying awards of alimony or child support, we will not be set aside or amended his judgment unless a clear abuse of that
 
 *861
 
 discretion is shown.”
 
 Brown v. Brown,
 
 98-1636, pp. 7-8 (La.App. 4 Cir. 5/19/99), 745 So.2d 37, 42. The trial court is not required to enumerate its reasons in writing.
 
 Davis v. Davis,
 
 43,490, p. 7 (La.App. 2 Cir. 10/22/08), 997 So.2d 149, 156.
 

 Although the trial court did not specify that it found good cause for awarding prospective child support, we find that the record provides a showing of good cause. The facts and circumstances of the case
 
 sub judice,
 
 reflect that Hurricane Katrina struck within a few days of Ms. Skinner filing for divorce and seeking child support. After Hurricane Katrina, Ms. Skinner and the children spent the majority of the time apart until August 2006, when the children began attending school in Slidell, Louisiana and living with Ms. Skinner. Subsequently, Mr. Watts began paying child support in December 2006. Therefore, we do not find that the [¡¿rial court abused its discretion by awarding prospective child support.
 

 ATTORNEY’S FEES & COURT COSTS
 

 Lastly, Ms. Skinner asserted, in her answer to the appeal, that Mr. Watts should be ordered to pay attorney’s fees and court costs. However, she failed to brief this issue.
 

 The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
 

 La. C.C.P. art. 2164. This case represents a contentious custody battle in which both parents, who the experts stated both love their children, seek designation as the domiciliary parent. The record does not connote that the legal actions taken by Mr. Watts necessitate the awarding of attorney’s fees and court costs.
 

 DECREE
 

 For the above mentioned reasons, we find that the trial court did not abuse its discretion in designating Ms. Skinner as the domiciliary parent and affirm. We also find that the trial court did not abuse its discretion by awarding prospective child support and affirm.
 

 AFFIRMED.