666 So.2d 1241 (1996)
Jeffrey David GRANTHAM, et ux., Plaintiffs,
v.
James DAWSON, et al., Defendants.
No. 27798-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
Writ Denied March 29, 1996.
*1243 Charles G. Tutt, James E. Bailey, Shreveport, for appellants.
Peatross, Greer & Frazier by Charles B. Peatross, Shreveport, Richie & Richie by Byron A. Richie, Shreveport, for appellees.
Before MARVIN, HIGHTOWER and WILLIAMS, JJ.
HIGHTOWER, Judge.
Plaintiffs and their third-party health care provider appeal the dismissal of a legal malpractice lawsuit, after the district court ruled that the underlying medical malpractice claim remained viable. We reverse.

BACKGROUND
Four-month-old Cory Grantham died of pneumonia and other complications on December 13, 1988, following more than a month's treatment by a Shreveport physician, Robert D. Haynie. Sometime after the infant's death, Lisa and Jeffrey Grantham, the child's parents, engaged the services of James Dawson, a Shreveport attorney, concerning a medical malpractice claim against Dr. Haynie.
On December 11, 1989, pursuant to the Louisiana Medical Malpractice Act, Dawson submitted a complaint to the Louisiana Commissioner of Insurance, provoking the formation of a medical review panel to examine Dr. Haynie's treatment of the child. Subsequently, by letter dated March 20, 1990, the commissioner informed Judge Andrew Gallagher that he had been appointed attorney-chairman of the panel by mutual agreement of the parties. The selection of three physicians for the panel concluded on February 12, 1991.
Recognizing that the panel would dissolve on March 20, 1991,[1] Dr. Haynie filed a motion in the district court to extend the body's existence, asserting that discovery had not been completed sufficiently to facilitate a timely decision concerning the claim. As a result, the judge signed an order prolonging the life of the panel, as requested, for an additional six months until September 20, 1991.
Later, on September 9, 1991, the Granthams discharged Dawson as their attorney and obtained their file from his office. Although the parents engaged another attorney, Donald Miller, the next day, Dawson failed to withdraw as counsel of record. Furthermore, no other lawyer entered an appearance or took any action on their behalf.
Meanwhile, on September 16, 1991, Dr. Haynie again moved to extend the medical review panel. He urged the same grounds as before, and the district judge promptly signed an order extending the body another six months until March 20, 1992. Although no notice of the filing went to the Granthams personally, the physician's attorney certified that a copy had been sent to "all counsel of record."
After filing the motion to extend the panel, Dr. Haynie's attorney became aware that Dawson no longer represented the Granthams. Concerned about that development, she so informed Gallagher and asked whether the panel chairman had been in touch with the parents in reference to several requested deadlines for the submission of evidence. In response, Gallagher attempted to contact the Granthams through letters to the only two available addresses, viz., their last known Texas domicile and the home of a Shreveport relative listed in the hospital records. These efforts proved unsuccessful and, with the panel lacking evidence and unable to render an opinion by March 20, 1992, Gallagher informed the other members that the medical *1244 review body had dissolved automatically under La.R.S. 40:1299.47(B)(1)(b).
In the interim on February 13, 1992, the Granthams had released their file to yet another lawyer, D.G. Tyler, so that his firm could review the documents and decide whether to accept the representation. Although subsequently receiving several inquiries as to the status of the matter, Tyler waited until July 24, 1992 to indicate in a letter that he would be unable to take the case. Not until they contacted a fourth attorney, and an inquiry had been made with Gallagher, did the Granthams learn that their claim possibly had prescribed upon suit not being timely filed in the district court after the review panel's termination.
Concluding that their medical malpractice demand had indeed been barred as a consequence of Dawson's and Tyler's negligence, the Granthams filed the instant legal malpractice lawsuit against the two attorneys and Tyler's insurer on April 12, 1993. Tyler, with Dawson later intervening, countered by instituting a separate declaratory judgment action in the same district court, naming the parents, Dr. Haynie, and the Louisiana Patients Compensation Fund Oversight Board as defendants and seeking a decree that the underlying medical malpractice claim never prescribed.
After trial regarding that latter aspect, the district court granted a February 22, 1994 declaratory judgment that the medical malpractice claim had not prescribed. In reaching that decision, the district judge read La. R.S. 40:1299.47(B)(3) to require that a plaintiff receive notice of a medical review panel's dissolution, even after the expiration of a court-ordered extension thereof.[2] Thus, inasmuch as chairman Gallagher failed to give such notification, prescription remained suspended. As additional grounds, the court concluded that the second motion for extension remained pending in that the ensuing order had been issued without proper notice to the plaintiffs and without a contradictory hearing. An appeal of the declaratory judgment followed.
Upon review, three judges of this court vacated the district court decree and dismissed the appeal. The appellate panel reasoned that the prescription question should be resolved in the pending legal malpractice suit, where it already constituted an essential element, rather than in a separate declaratory action. See Tyler v. Grantham, 26,678 (La.App.2d Cir. 07/21/94), 641 So.2d 632. Additionally, in remanding the matter to the district judge, the opinion mandated the following:
1. That the petition for declaratory relief be construed as a pleading filed in the legal malpractice suit to seek the joinder of additional parties and a decision on the issue of prescription;
2. That the vacated judgment, previously holding that the underlying medical malpractice action had not prescribed, be subsequently rendered by the district court in the legal malpractice suit.
On January 17, 1995, acting in accordance with these directives, the lower court rendered judgment dismissing the Granthams' legal malpractice claim. Following the denial of Dr. Haynie's motion for new trial, both the physician and the Granthams lodged the present appeals.

DISCUSSION

Notice under La.R.S. 40:1299.47(B)(3)
The first issue addressed is whether, in order to trigger its ninety-day suspension of prescription, La.R.S. 40:1299.47(B)(3) requires notice to all parties concerning the expiration of a court-ordered extension of the medical review panel. We find no such requirement.
The courts of this state are directed to read and construe statutory words and phrases according to the common and approved usage of the language and, when that wording is clear and free of ambiguity, not *1245 to disregard the letter of the law under the pretext of pursuing its spirit. See La.R.S. 1:3, 1:4; Jungina v. Stafford, 535 So.2d 794 (La.App. 2d Cir.1988). We should reject hypertechnical constructions of a statute when its plain wording lends itself to a reasonable interpretation consistent with the legislative intent. Backhus v. Transit Cas. Co., 549 So.2d 283 (La.1989). Examining La.R.S. 40:1299.47(B)(3) in this light, we find that by utilizing the disjunctive term "or" between the two described eventsthe notification of all parties by certified mail that the medical review panel has dissolved, as one, and the expiration of a court-ordered extension, as the otherthe legislature has clearly conveyed its intent that either occurrence will trigger the running of the ninety-day period, after which the suspension of prescription ceases. See La.R.S. 1:9. Moreover, given that the review panel automatically dissolves upon the expiration of any court-ordered extension, see La.R.S. 40:1299.47(B)(1)(b); Bankston v. Alexandria Neurosurgical Clinic, 583 So.2d 1148 (La.App. 3d Cir.1991), writ denied, 589 So.2d 1066 (La.1991), no reference to that event would have been necessary had the drafters sought to require notification regarding all dissolutions. It is incumbent upon us, of course, to give effect to all parts of a statute and not adopt constructions making any part superfluous, meaningless, or nugatory, if that result can be avoided. First National Bank of Boston v. Beckwith Machinery Co., 94-2065 (La. 02/20/95), 650 So.2d 1148; State v. Reed, 27,868 (La.App.2d Cir. 01/24/96); 667 So.2d 586.
Guided by this, we conclude that the trial court erred in holding that the Louisiana Medical Malpractice Act required the attorney-chairman to notify the Granthams that the medical review panel had dissolved upon the expiration of the court-ordered time extension. Consequently, with plaintiffs then having only about two days (of the one-year term) to file a medical malpractice lawsuit, their claim against Dr. Haynie prescribed when they or their lawyers failed to institute that action almost immediately upon the running of the ninety-day suspension.

Validity of the Second Extension of the Medical Review Panel
We next address the trial court's alternative grounds for finding that the medical malpractice claim remains viable. Essentially, because plaintiffs did not personally receive notice of the second extension motion or a contradictory hearing, the district judge held the granted order to be null and the foregoing motion to be still pending before the court. We, however, disagree with that reasoning.
Upon filing the request for the second extension of the review panel, Dr. Haynie's attorney certified that she had sent copies of the motion to "all counsel of record." It is well settled that notice to an attorney of record is notice to the client. Imperial v. Hardy, 302 So.2d 5 (La.1974); Coleman E. Adler & Sons, Inc. v. Waggoner, 538 So.2d 1131 (La.App. 5th Cir.1989); Barber v. Testa, 331 So.2d 139 (La.App. 3d Cir. 1976). Although Tyler maintains that this rule does not apply here, appellees point to no part of the record, and we find none, indicating that the health care provider knew that Dawson no longer represented the parents at the time the extension motion was filed and acted upon by the judge. Cf. Rawley v. Rawley, 357 So.2d 286 (La.App. 1st Cir.1978), writ denied, 357 So.2d 1154 (La. 1978). Moreover, Dr. Haynie's lawyer had no obligation to determine who actually represented the Granthams at that instant. Cf. Coleman E. Adler & Sons, Inc., supra. Indeed, it can be strongly argued that, even after the termination of his employment, Dawson owed a duty to inform the Granthams or their new attorney about the motion. See Rule of Professional Conduct 1.16(d).[3]
Neither are we impressed by the contention that, because no suit had been filed in the district court, no attorney of record existed. The record for the review panel proceedings clearly indicates that Dawson, who filed the initial claim, represented the parents for an extensive time by taking various steps in the prosecution of their action. What is more, the first indication that Dawson's *1246 status could be in question appears after the extension order had been granted, viz., when Dr. Haynie's counsel, in informing Gallagher of the extension, noted that the Granthams might be unrepresented.
Citing La.C.C.P. Art. 963, Tyler additionally complains about the lack of a contradictory hearing on the issue of whether "good cause" existed for the granting of the second extension. He argues that the resulting order is not one to which the mover is clearly entitled. We disagree. First of all, with the grounds adequately specified, we indeed view this to be such an order. Second, we are not persuaded that a contradictory hearing is demanded in every situation requiring "good cause." As acknowledged here in oral argument, the law is replete with instances, including this court's own rules, where requiring a contradictory hearing before issuing an order based upon "good cause" would be impractical and quite absurd. See, e.g., La.C.C.P. Arts. 2126(B), 3181; La.C.Cr.P. Art. 929(B); URCA 2-12.8. Most assuredly, constitutional due process does not contemplate that every step in a civil proceeding be accompanied by a contradictory hearing between the affected parties. Sonnier v. Liberty Mutual Ins. Co., 258 La. 813, 248 So.2d 299 (1971); Miller v. Campbell, 407 So.2d 491 (La.App. 1st Cir.1981). Besides, had the Granthams wished to mount a challenge, they could easily have filed a motion for an evidentiary hearing to set aside the extension order.[4] Cf. Brown v. Edwards, 435 So.2d 1073 (La.App. 1st Cir. 1983), writ denied, 441 So.2d 751 (La.1983).
For these reasons, the trial court erred in nullifying the second extension order and in finding the related motion to be still pending.

Addition of Health Care Provider as Party to a Legal Malpractice Suit
In another assignment of error, Dr. Haynie challenges this court's earlier decision construing the pleadings in the declaratory action as a request to add parties to the legal malpractice suit. Irrespective of the law of the case doctrine, however, we decline at this late date to revisit the prior panel's resolution of the matter.
Even so, the wisdom of that previous exercise of supervisory jurisdiction is now well demonstrated. With Dr. Haynie having been made a party to the present case, any rendered judgment will be res judicata as between the health care provider and the Granthams, thus avoiding the potential of relitigating an identical issue in a separate medical malpractice action. Moreover, the provisions of La.R.S. 40:1299.47(B)(2)(a) allow the issue of prescription to be raised in a court of competent jurisdiction and proper venue "at any time without need for completion of the review process by the medical review panel." See Doe v. Our Lady of the Lake Hospital, 633 So.2d 237 (La.App. 1st Cir.1993), writ denied, 93-3181 (La. 02/11/94), 634 So.2d 834.

CONCLUSION
Determining that prescription ran in reference to the medical malpractice claim, we reverse the district court's dismissal of the legal malpractice action against Tyler and Dawson and remand for further proceedings consistent with this ruling. Costs are assessed to appellees.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 40:1299.47(B)(1)(b) provides in pertinent part:

[I]f an opinion is not rendered by the panel within twelve months after the date of notification of the selection of the attorney chairman by the executive director to the selected attorney and all other parties pursuant to Paragraph (1) of Subsection C of this Section, suit may be instituted against a health care provider covered by this Part. However, either party may petition a court of competent jurisdiction for an order extending the twelve month period provided for in this Subsection for good cause shown. After the twelve month period provided for in this Subsection or any court-ordered extension thereof, the medical review panel established to review the claimant's complaint shall be dissolved without the necessity of obtaining a court order of dissolution.
[2] La.R.S. 40:1299.47(B)(3) provides:

Ninety days after the notification to all parties by certified mail by the attorney chairman of the board of the dissolution of the medical review panel or ninety days after the expiration of any court-ordered extension as authorized by Paragraph (1) of this Subsection, the suspension of the running of prescription with respect to a qualified health care provider shall cease.
[3] Rule 1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests....
[4] Even assuming that the Granthams could have validly challenged the order granting the extension, the issue became moot once the additional six months passed. In fact, nullifying that decree would have meant that the suspension of prescription ended ninety days after the expiration of the first extension. Thus, no substantial prejudice resulted to plaintiffs, who indeed assert none.