704 So.2d 229 (1997)
Matthew G. ROUSSEVE
v.
Alynza JONES, et al.
No. 97-CC-1149.
Supreme Court of Louisiana.
December 2, 1997.
*230 Alynza Jones, in proper person.
Dale J. Petit, Hester, for Applicants.
Matthew Rousseve, in proper person.
Anthony P. Lewis, Thibodaux, Terrell J. Myles, Houma, for Respondent.
LEMMON, Justice.[*]
In this action, Matthew Rousseve seeks to invalidate a judgment ordering payment of child support based on his formal acknowledgement of paternity that he executed in connection with a Title IV-D proceeding.[1]

Facts
For some time prior to 1994, Rousseve and Alynza Jones were involved in a sexual relationship, but were never married. On June 14, 1994, Alynza Jones gave birth to Aleigha Jones. The mother sought government assistance to families with dependent children and identified Rousseve as the father. The Department of Social Services, with an assignment of the mother's rights, then commenced a proceeding to enforce Rousseve's obligation as the child's father. In that proceeding, Rousseve executed a formal acknowledgement of paternity by notarial act on January 26, 1995, stating that he was the child's biological father.[2] Rousseve also stipulated to a judgment ordering him to pay $110 per month in child support on behalf of Aleigha.
In 1996, Rousseve allegedly learned that he was not the child's biological father because the mother was living with another man at the time of conception. He instituted this civil action with a "Petition to Determine the Proper Payor of Child Support" pursuant to La.Rev.Stat. 9:305, which allows a "legal father" a period of time beyond the usual period for disavowing paternity when the mother by fraud, misrepresentation or deception caused him to erroneously believe he was the father. Rousseve claimed that he had just become aware of fraud or misrepresentation by the child's mother and sought to have himself, the mother and the child subjected to blood testing under La.Rev.Stat. 9:396 to determine whether he was the biological father.
The attorney appointed to represent the child filed a dilatory exception of prematurity, asserting that Rousseve could not obtain blood testing without first challenging the validity of his previous acknowledgement of paternity. Also filed were peremptory exceptions of res judicata, no cause of action, and no right of action, the latter asserting that Rousseve is not considered the legal father under La.Rev.Stat. 9:305. When the trial court sustained the exception of prematurity, Rousseve sought supervisory writs under La.Code Civ. Proc. art. 2201.
The court of appeal granted supervisory writs and reversed the trial court in an unpublished opinion. While the trial court had sustained an exception of prematurity, the court of appeal treated the matter as one involving an exception of no right of action, noting that the exceptor had substantively *231 argued that Rousseve was not a member of the class of "legal fathers" who may bring an action under La.Rev.Stat. 9:305.[3]
The court of appeal held that Rousseve became the child's "legal father" by executing the act of acknowledgment. In reaching this conclusion, the court rejected the child's argument that the term "legal father" in La.Rev.Stat. 9:305 included only one presumed by law to be a father under La. Civ.Code arts. 184-189, such as the husband of the child's mother. As the child's legal father, the court reasoned, Rousseve was entitled to bring an action under Section 305.
The court of appeal further noted Rousseve was required to make a prima facie case of lack of paternity before a blood test would be ordered. Accordingly, the court remanded the case to the trial court for a hearing on whether Rousseve can make such a prima facie showing.
On the child's application, this court granted certiorari, primarily to address the issue of whether a man who has acknowledged an illegitimate child has a right of action under La.Rev.Stat. 9:305 or any other procedure to attack the validity of the acknowledgment and the consequent child support obligation.

Legal Father Under La.Rev.Stat. 9:305
The first issue before us is whether the child's mother's sex partner, who has executed an authentic act acknowledging paternity of the illegitimate child, is entitled to utilize La.Rev.Stat. 9:305 to obtain a suspension of the period for filing a disavowal action. Section 305 provides:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
The phrase "husband, or legal father who is presumed to be the father" is the focus of our analysis of Section 305. If we determine that an acknowledger (such as Rousseve) falls within this definition of "legal father," then he is entitled to claim the optional period of suspension provided by Section 305.
Neither the Civil Code nor the Revised Statutes provide a comprehensive definition of the term "legal father." However, La. Rev.Stat. 9:305 refers to the chapter in the Civil Code dealing with legitimate children. In that chapter, La. Civ.Code art. 184 provides: "The husband of the mother is presumed to be the father of all children born or conceived during the marriage." This presumption historically has been regarded as the strongest presumption in the law. Neil S. Hyman, Comment, Louisiana's New Disavowal Legislation: A Critical Appraisal, 22 Loy.L.Rev. 963, 963 (1976). La. Civ.Code art. 185 provides that when a child is born within 300 days of the dissolution of the marriage, the child is presumed to have been conceived during the marriage. La. Civ. Code art. 188 also creates a form of presumed paternity when a man knowingly marries a pregnant woman, or when a husband consents to the artificial insemination of his wife.[4] These presumptions all arise by operation of law in connection with a marriage between the child's mother and the presumed father, either before or after the birth or conception of the child. The term "legal father" in La.Rev.Stat. 9:305 applies to the husbands and former or subsequent husbands included in Articles 184-189. Inasmuch as Rousseve was never the husband of the child's mother and the child is illegitimate, none of these presumptions apply to him.
There are different presumptions of paternity concerning illegitimate children. La. Civ.Code art. 203 provides for acknowledgment *232 by authentic act or by registry in birth or baptismal records. Acknowledgment by registry requires only the acknowledging parent's signature on the birth or baptismal record and expressly creates a rebuttable presumption of paternity. La. Civ.Code art. 203 B(2).[5] On the other hand, La. Civ.Code art. 203 B(1), dealing with acknowledgment by authentic act, does not expressly provide a presumption of paternity, but states only that an acknowledgment by authentic act is "sufficient to establish an obligation to support an illegitimate child without the necessity of obtaining a judgment of paternity." In effect, Article 203 B(1)'s dispensation with the necessity of obtaining a judgment in a paternity action also creates a presumption of paternity, at least as to the obligation of child support.[6]
Against this background of the presumptions of paternity for legitimate and illegitimate children, we address the question of whether a person presumed to be an illegitimate child's father by virtue of an acknowledgement by authentic act under La. Civ.Code art. 203 B(1) is the child's "legal father" within the contemplation of La.Rev. Stat. 9:305, as the court of appeal concluded.
By its terms, La.Rev.Stat. 9:305 gives a "legal father" an avenue for overcoming a presumption of paternity of a legitimate child that rests upon him perhaps against his will or at least without any specific affirmative act by him. Section 305 expressly applies to an action "in disavowal." As Planiol explains, "[d]isavowal is the term applied to the act the purpose of which is to wipe out the presumption of paternity established against the husband, when he cannot be the child's father." See 1 Marcel Planiol, Trait imentaire du Droit Civil § 1422 (La. State Law Institute transl.1959). Disavowal generally is available "solely in the husband's interest to liberate him from a legal presumption which is found to be false." 1 Planiol, at § 1422.
On the other hand, a man who acknowledges paternity of an illegitimate child under La. Civ.Code art. 203 B(1) does so by an act of will, and not as an incident to marriage to the child's mother. The acknowledger is not in the same class, for purposes of La.Rev. Stat. 9:305, as a husband or former or subsequent husband whose paternity is presumed solely by operation of law and the circumstance of the past, present or subsequent marital relationship. Moreover, Section 305's express reference to La. Civ.Code art. 189 (pertaining to the period within which a "husband" presumed by law to be the father of a legitimate child may bring a disavowal action) suggests that Section 305 was not intended to apply to a person presumed to be the father of an illegitimate child based on a voluntary act of acknowledgement, but only to a presumed father of a legitimate child based on being the husband or former or subsequent husband of the child's mother.
We therefore conclude that a man whose paternity of an illegitimate child results solely from his authentic act of acknowledgment of the illegitimate child is not a "legal father" within the contemplation of La.Rev.Stat. 9:305. He is not, strictly speaking, entitled to disavow the child, and the advantages of Section 305 are not applicable to him. Because Rousseve is presumed to be the father of Aleigha Jones solely by virtue of the act of acknowledgment, Section 305 is inapplicable to him.
But our analysis does not end here. To hold that Section 305 does not apply to one who formally acknowledges paternity of an illegitimate child is not to say that such a person may not challenge the acknowledgment. See 1 Planiol at §§ 1485-1494. We only hold that one who is a putative parent because of acknowledgment of an illegitimate child is historically and conceptually different from one presumed to be a parent of a legitimate child by operation of law, and should not be treated the same for purposes of Section 305.

Right of Action to Challenge Acknowledgment
An acknowledgment of an illegitimate child by authentic act effectively creates *233 a presumption of biological parentage. Conversely, the acknowledgment is premised on a biological relationship, which is the reason for the acknowledgement. An authentic act of acknowledgment of paternity of an illegitimate child is a solemn statement by the acknowledger that he believes a child is his. The acknowledgment does not cause the child to be his; it merely acknowledges that he believes it is. When the acknowledged fact is ultimately untrue, the acknowledgment may be null, absent some overriding concern of public policy.[7]
This court has held that an acknowledgement of paternity in the absence of a biological relationship is a nullity. Succession of Robinson, 94-2229, pp. 4-6 (La. 5/22/95), 654 So.2d 682, 684-85. See also 1 Planiol, at §§ 1489, 1489A. Consequently, an action to contest paternity, which is presumed because of an authentic act of acknowledgment, is not truly an action for disavowal, but is an action to annul the acknowledgment.
The import of Rousseve's petition, although attempting to utilize La.Rev.Stat. 9:305, is a demand to annul the acknowledgment which forms the basis of his obligation to support the child that, in the light of his present knowledge, is not his child. This demand is complicated by the judgment recognizing his support obligation (and implicitly his paternity). While Rousseve's petition does not expressly demand annulment of the judgment, pleadings should be construed so as to do substantial justice, and a judgment should grant the relief to which the party is entitled, even if not demanded. La. Code Civ. Proc. arts. 865, 862. We accordingly construe Rousseve's petition as asserting the nullity of his notarial acknowledgment and of the resulting support judgment on the basis that his belief of paternity, stated in the acknowledgment, was erroneous, being based on the mother's fraud, misrepresentation or deception.[8] A judgment obtained by fraud or ill practice may be annulled in an action filed within a year of the discovery of the fraud or ill practice. La.Code Civ. Proc. art.2004.
Treating the petition as a demand to annul the act of acknowledgment and the resulting support judgment, we conclude that Rousseve has a right of action in this respect.[9] The court of appeal, although for different reasons, properly reversed the judgment of the trial court that, in effect, maintained an exception of no right of action.[10]
The case must be remanded to the trial court for a hearing, under La.Code Civ. Proc. art.2004, on Rousseve's allegations regarding the inducement of his belief of paternity that caused him to sign the act of acknowledgment which led to the support judgment. Of course, the support judgment stands unless and until it is annulled.

*234 Decree

Accordingly, the judgment of the court of appeal overruling the exception of no right of action is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] In La.Rev.Stat. 46:236.1-236.9, the Legislature authorized the Department of Social Services to develop and implement a program which, among other things, provides for enforcement of support obligations, utilizing federal funding assistance provided by Title IV-D of the Social Security Act.
[2] The trial judge observed that Rousseve, after the Title IV-D action was brought, came in and voluntarily signed the acknowledgement.
[3] The child's attorney had also pleaded an exception of no right of action. Moreover, the trial or appellate court may notice this exception on its own motion. La.Code Civ. Proc. art. 927B.
[4] La. Civ.Code art. 189, the article specifically referred to in Section 305, requires that an action for disavowal of paternity of legitimate children generally must be filed within 180 days after the husband has learned or should have learned of the birth of the child.
[5] Article 203 B(2) apparently contemplates that the party seeking to establish paternity must file a paternity action, but will be aided in that action by the rebuttable presumption.
[6] Similarly, acknowledgement leading to registry of the acknowledger in the putative father registry creates a presumption of paternity with respect to adoptions. La.Rev.Stat. 9:400, 400.1.
[7] This court recently refused to permit a blood test when a husband, presumed to be the father of a legitimate child under La. Civ.Code art. 184, attempted to disavow his presumed child well after any disavowal action had prescribed and the legal presumption had become "irrebuttable." See State v. Walker, 97-0330, p. 3, n.1 (La. 10/21/97), 700 So.2d 496, 498, n.1. The Walker case is distinguishable from this case on the basis that Walker remained married to the child's mother long after separation, even until the mother's death. This presumption of paternity is one of the strongest in the law, in that it supports the policy favoring marriage and legitimacy of children. In the instant case, Rousseve never married the child's mother, and legitimacy is not an issue because Rousseve executed only an acknowledgment of filiation for purposes of child support without expressing any intention to legitimate the child. Cf. La. Civ.Code art. 200.
[8] The prayer of the petition demanded a judgment decreeing that Aleigha Jones is not Rousseve's child.
[9] A person has a right of action if he or she has a real and actual interest in the action asserted. La.Code Civ. Proc. art. 681.
[10] Because many judgments ordering support of illegitimate children are based on similar acknowledgements, we are cautious in our decision to allow an attack on such acknowledgements and resulting judgments. Nevertheless, La.Code Civ. Proc. art.2004 expressly authorizes an action to annul any judgment obtained by fraud or ill practice. The current state of the art in blood testing also eases our concern about annulling support judgments. Moreover, fair play and substantial justice clearly mandate that deceived acknowledgers of paternity who are shown by blood testing not to be the parent should not be compelled to pay child support.