771 So.2d 275 (2000)
Jacinta J. JONES
v.
Roland RODRIGUE.
Joseph Hamilton
v.
Jacinta J. Jones and the Minor, Anfernee Joseph Charles Hamilton.
Nos. 00 CU 0899, 00 CU 0900.
Court of Appeal of Louisiana, First Circuit.
November 3, 2000.
*276 Roland Rodrigue, Belle Rose, Defendant-Appellant in Proper Person.
Sidney A. Marchand, III, Donaldsonville, for Plaintiff-Appellee Jacinta J. Jones.
BEFORE: PARRO, GUIDRY, and SIMON, JJ.[1]
GUIDRY, J.
Appellant Roland Rodrigue seeks review of the trial court's judgment ordering him to pay child support and denying him joint custody of the minor child, Anfernee Joseph Charles Hamilton (Anfernee). Based on the following review, we affirm in part, vacate in part and remand.

FACTS AND PROCEDURAL HISTORY
On February 24, 1997, Jacinta J. Jones gave birth to the minor child, Anfernee, at Riverwest Medical Center in Plaquemine, Louisiana. At the time of Anfernee's birth, it was believed that Joseph Hamilton, Ms. Jones' fiancé, was Anfernee's biological father. In accordance with this belief, Mr. Hamilton executed the In-Hospital Acknowledgment of Paternity form provided by Riverwest Medical Center and his name was listed on Anfernee's birth certificate as the father.
On May 2, 1997, appellant, Ms. Jones and Anfernee submitted to a paternity test, which revealed a 99.1 percent probability that appellant was the biological father of Anfernee. Thereafter, on November 26, 1997, appellant executed an acknowledgment of paternity declaring *277 himself to be the natural father of Anfernee.
On April 23, 1998, Ms. Jones filed a "Petition To Establish Paternity, For Support, And For Name Change," against appellant, in which she requested that appellant be recognized as the natural father of Anfernee, that appellant be ordered to pay child support and provide medical coverage for the minor child, and that Anfernee's last name be changed to Rodrigue. In addition to the petition, Ms. Jones filed a request for admissions of fact, in which she sought to have appellant admit that he is the father of Anfernee, and the affidavit of Joseph Hamilton, in which he waived any rights he may have had as the alleged father of Anfernee and consented to "another man" being recognized as the father of Anfernee.
On May 6, 1998, appellant answered the petition denying any obligation to pay child support or provide medical coverage for the minor child, although appellant had already applied for and been granted authorization to add Anfernee to his medical coverage prior to the institution of Ms. Jones' suit. Further, appellant made the following requests in his answer: (1) that he be granted joint custody of Anfernee and visitation rights; (2) that he be allowed to claim Anfernee on his income tax returns in even-numbered years beginning in 1998; (3) that all costs of the proceedings be cast to Ms. Jones; and (4) in the event he is ordered to pay child support, that he be given a credit for the medical coverage provided and for sums paid for Anfernee's support prior to the rendition of the judgment.
On September 8, 1998, Ms. Jones filed a motion for summary judgment, and a hearing on the motion was set for September 29, 1998, but continued until November 10, 1998.[2] Following the hearing, the trial court denied the motion and instructed the parties to set the matter for trial.
On December 7, 1998, Mr. Hamilton filed a "Petition To Annul Acknowledgment or Declaration of Paternity," in which he averred that appellant was the biological parent of Anfernee. He further requested that the act of acknowledgment be annulled and that a curator be appointed by the court to represent the interests of Anfernee. Ms. Jones and Anfernee were named as defendants in Mr. Hamilton's petition.
A joint motion to transfer and to consolidate the petitions of Ms. Jones and Mr. Hamilton was consented to and filed by the parties on February 10, 1999, and an order granting the same was signed by the trial court on that date. A trial on the consolidated matters was held on July 12, 1999, and a judgment in favor of Ms. Jones was rendered on November 18, 1999. In the judgment, the trial court decreed that Anfernee's last name be changed to Rodrigue; that appellant be listed on the birth certificate as father; that the sole care, custody and control of Anfernee be awarded to Ms. Jones; that appellant pay child support in the amount of $461.00 per month, retroactive to the date of filing of the petition; and that appellant be granted reasonable visitation with the minor child.
Appellant filed a petition to devolutively appeal the November 18, 1999 judgment on January 3, 2000.

ASSIGNMENTS OF ERROR
In lodging this appeal, appellant expressed disagreement with several aspects of the district court's judgment. In his original brief, however, appellant failed to list any assignments or specifications of error, but did provide a listing in his brief in rebuttal. Since appellant is conducting this appeal in proper person, we will conduct our review by considering the assignments *278 of error listed in his rebuttal brief. See Rader v. Department of Health and Hospitals, Office of Public Health, Engineering Services, 94-0763, p. 5 (La.App. 1st Cir.3/3/95), 652 So.2d 644, 646. Appellant alleges that the trial court erred in the following respects:
1. The 23rd Judicial District Court failed to recognize Mr. Joseph Hamilton as the presumptive/legal father of Anfernee Joseph Hamilton.
2. Mr. Hamilton did not file his "Petition to Annul Acknowledgment or Declaration of Paternity" until December 7, 1998, suit # 63,733. Therefore Mr. Rodrigue would not have been legally obligated to pay child support until the court had rendered a decision on that suit. Mr. Rodrigue's child support obligation would then have been effective on that date, which is November 16, 1999, if the court ruling remains effective.
3. On July 12, 1999, Mr. Rodrigue was led to believe, by his attorney, Benjamin Johnson, that the issues in question were whether or not Joseph Hamilton was obligated to pay child support, and the naming of his son. It was his understanding that once this issue was settled, Mr. Rodrigue would have an opportunity to present his case to the Honorable Judge Peytavin. During the proceedings, when Mr. Marchand was introducing documents in evidence, Mr. Rodrigue's attorney told him it did not matter because he would have a chance of presenting his case at a later date and make rebuttals at that time. (Mr. Rodrigue is aware this is not the fault of the court, however, it was an error that affected the decision rendered by the court).
4. The court based Mr. Rodrigue's child support on his income at the time of the trial and not his income at the time of the petitions and the months preceding.
5. Mr. Rodrigue was never notified of the final judgement (sic) by the 23rd Judicial District court or the Ascension Parish Clerk of Court. The court was aware Mr. Rodrigue was acting in proper person and supporting documents were submitted in Mr. Rodrigue's brief "WHY THE APPEAL SHOULD NOT BE DISMISSED." When Mr. Rodrigue visited the Ascension Parish's (sic) Clerk of Court in mid December of 1999, he received a copy of the Final Judgement (sic) Notice.
6. Mr. Rodrigue was not granted joint custody of his son, Anfernee Rodrigue.
7. And finally the courts (sic) did not look at the venue issue. Mr. Rodrigue and Ms. Jacinta Jones, both resided in Assumption Parish at the time the original petition was filed. Mr. Rodrigue was served the original subpoena by the Assumption Parish Sheriffs Department. The original petition was filed in Ascension Parish. Mr. Rodrigue, in his answer, to the original petition filed on May 6, 1998, indicated his address was 200 Ideal Street, Belle Rose, Louisiana 70341, which is located in Assumption Parish.

DISCUSSION
In his first assignment of error, appellant contends that the trial court erred in not finding that Mr. Hamilton was the presumed or legal father of Anfernee. The Louisiana Supreme Court expressly rejected this notion in Rousseve v. Jones, 97-1149 (La.12/2/97), 704 So.2d 229. In that case, the court determined that the plaintiff, who was only presumed to be the father of the illegitimate child in question based on his execution of an act of acknowledgment, was not and could not be considered the "legal father" within the contemplation of La. R.S. 9:305, because *279 he was not of the class of persons for whom, by operation of law, that status is conferred. The court then delineated that class of persons as being composed of "the husband or former or subsequent husband" of the mother of a legitimate child. Rousseve, 97-1149 at 6, 704 So.2d at 232.
Similarly, Mr. Hamilton cannot be deemed the "legal father" of Anfernee. Mr. Hamilton has never been married to Ms. Jones, the mother of Anfernee. The sole basis for the presumption that he is Anfernee's father, as in Rousseve, stems from the act of acknowledgment Mr. Hamilton executed on the day Anfernee was born. The facts of this case clearly negate a finding that Mr. Hamilton is the legal father of Anfernee and therefore, the trial court did not err in refusing to designate Mr. Hamilton as such.
In his second, third and fourth assignments of error, appellant contests the award of child support decreed by the trial court. In his first argument, appellant states that the trial court erred in ordering that payment of child support be made retroactive to the date of Ms. Jones' filing of her petition rather than to the date of judgment. Specifically, appellant argues that he should not have been obligated to pay child support until Mr. Hamilton's acknowledgment of paternity had been annulled by the court. Also, in conjunction with that argument, appellant implies that it was error for the trial court to annul the acknowledgment of paternity executed by Mr. Hamilton. We shall address this issue first.
Consistently throughout his pleadings, appellant has argued that Mr. Hamilton was precluded from bringing an action to annul his acknowledgment of paternity because such action was commenced more than a year after Mr. Hamilton first learned that he was not the biological father of Anfernee. Appellant bases this contention on La. C.C.P. art. 2004, which states, in part, "[a]n action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices." However, for the following reasons, we hold that the trial court was correct in granting Mr. Hamilton's petition to annul the act of acknowledgment.
First, we note that recognition of Mr. Hamilton as the father of Anfernee is based on a notarial act and not a final judgment. This distinction is significant in light of La. C.C. art. 206, which particularly applies to the rescission of a notarial act. Specifically, subsection B states:
B. At any time, a person who executed a notarial act of acknowledgment or declaration may petition the court to void such acknowledgment or declaration only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, or material mistake of fact, or that the person is not the biological parent of the child. Except for good cause shown, the court shall not suspend any legal responsibilities or obligations, including a support obligation, of the person during the pendency of this proceeding. (emphasis added)
Furthermore, in Succession of Robinson, 94-2229, p. 4 (La.5/22/95), 654 So.2d 682, 684, the Louisiana Supreme Court expressly stated that absent a biological relationship, an act of acknowledgment is null. Therefore, based upon these authorities, we hold that the trial court did not err in granting Mr. Hamilton's petition to annul.
The rest of appellant's argument in his second assignment of error is based on the assumption that only one of the recognized fathers of a child can be obligated to provide support at any given time. This assumption, however, has been clearly repudiated in the jurisprudence of this state as evidenced by the line of "dual paternity" cases. Specifically, in Smith v. Cole, 553 So.2d 847 (La.1989), the Louisiana Supreme Court articulated the duty of a biological father in instances where another person also claims paternity:

*280 The presumed father's acceptance of paternal responsibilities, either by intent or default, does not enure to the benefit of the biological father. It is the fact of biological paternity or maternity which obliges parents to nourish their children. The biological father does not escape his support obligations merely because others may share with him the responsibility. Biological fathers are civilly obligated for the support of their offspring.
Smith, 553 So.2d at 854. In Smith, the question was whether a biological father is obligated to support his child when another can claim paternity as a "legal father." Mr. Hamilton never has been the legal father of Anfernee. Even if he had been so designated, that would not in any way diminish appellant's obligation to Anfernee as the biological parent. A parent's duty of support is a legal duty which cannot be renounced or suspended. Dubroc v. Dubroc, 388 So.2d 377 (La.1980); Guillory v. Guillory, 97-354, p. 5 (La.App. 3rd Cir.10/29/97), 702 So.2d 1079, 1082.
In State, Department of Social Services, Office of Family Support ex rel. Munson v. Washington, 32,550 (La.App. 2nd Cir.12/8/99), 747 So.2d 1245, the state sought to determine paternity and assess child support against the defendant, the alleged biological father. The defendant had successfully argued before the trial court that the state was precluded from taking such actions, because another man was already legally presumed to be the child's father. In reversing the decision of the trial court, the appellate court held that the fact that another man is legally presumed to be the father, "does not obviate or alter in any way the support obligation owed by the biological father." Munson, 32,550 at 3, 747 So.2d at 1248. Therefore, the trial court was correct in decreeing that appellant was obligated to provide child support for Anfernee, even during the period when Mr. Hamilton was presumed to be the father.
In his third assignment of error, appellant argues that it was error for the trial court to have awarded child support without, having first received any evidence from him on this issue. At trial Ms. Jones presented documentation regarding appellant's gross income and joint stipulations were entered into the record concerning the gross income of both parties.[3] Appellant admits in brief that the reason why he failed to submit any evidence concerning his ability to pay child support was because his attorney misled him to believe that the amount of child support was not going to be determined by the trial court in that judgment and that he would have the opportunity at a later date to present such evidence.
The trial court is vested with much discretion in fixing the amount of child support and such an award will not be disturbed on review unless there has been a clear abuse of this discretion or manifest error in his factual determinations. Gautreau v. Gautreau, 96-1548, p. 9 (La.App. 3rd Cir.6/18/97), 697 So.2d 1339, 1347, writ denied, 97-1939 (La.11/7/97), 703 So.2d 1272. Appellant correctly notes that La. R.S. 9:315.1(B) allows the trial court to deviate from the child support guidelines when a strict following of the guidelines would not be in the best interest of the child or would be inequitable to the parties. However, without the presentation of any evidence indicating either of the aforementioned circumstances, the trial court lacked authority to deviate from the guidelines.
*281 Appellant seeks to submit such evidence to this court for our review, but we are limited by law from considering such evidence. The court of appeal has no jurisdiction to receive new evidence. Nickens v. Patriot Home Systems, 97-0291, p. 3 (La.App. 1st Cir.2/20/98), 708 So.2d 1184, 1186. Therefore this assignment of error lacks merit.
In appellant's fourth assignment of error, he alleges that the trial court incorrectly determined the amount owed based on his salary at the time of trial rather than basing its determination on his salary at the time the petition was filed or earlier. In regard to this argument, we turn to La. R.S. 9:315.2(A), which requires that the parents submit documentation of current and past earnings for the court's consideration. Based on a plain reading of the statute, the trial court did not err in considering the amount of wages earned by appellant at the time of trial rather than at the time of the filing of the petition. Accordingly, we reject appellant's fourth assignment of error.
In his fifth assignment of error, appellant protests the alleged failure of the trial court to send him personal notice of a final judgment being rendered in this matter. An examination of the record reveals a notice of judgment sent to counsel for Ms. Jones and, at the bottom of the notice, it is indicated that certified copies of the notice were sent to the following persons: Mr. Benjamin L. Johnson, Mr. Joseph Hamilton and Mr. Lee J. Amedee, III. Although appellant notes that he is representing himself on appeal, at trial he was represented by Benjamin L. Johnson. It is well settled that notice to an attorney of record is notice to the client. Grantham v. Dawson, 27,798, p. 5 (La.App. 2nd Cir.1/24/96), 666 So.2d 1241, 1245, writs denied, 96-0487, 96-0459 (La.3/29/96), 670 So.2d 1228 and 1230. Furthermore, the record does not disclose any notice to the court that appellant was no longer being represented by Mr. Johnson at the time the notice of final judgment was sent. Thus, the fact that the appellant failed to receive personal notice of the final judgment cannot be attributed to the trial court. This assignment of error lacks merit.
In appellant's sixth assignment of error, he argues that the trial court erred by failing to grant him joint custody of Anfernee. Although the question of custody in this matter involves two parties who were never married to each other, La. C.C. art. 245 states that such custody disputes are governed by the same principles that govern custody awards incident to divorce. See Evans v. Terrell, 27,615, p. 5 (La.App. 2nd Cir.12/6/95), 665 So.2d 648, 651, writ denied, 96-0387 (La.5/3/96), 672 So.2d 695; Wyatt v. White, 626 So.2d 816, 818 (La. App. 2nd Cir.1993). Therefore, La. C.C. arts. 131-136 should control the trial court's determination of this issue.
Article 131 states that an award of custody shall be made in accordance with the best interest of the child. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Raney v. Wren, 98-0869, p. 4 (La.App. 1st Cir.11/6/98), 722 So.2d 54, 56.
In determining what is the best interest of the child in a child custody dispute, the trial court is guided by the factors listed in Article 134.[4] The factors *282 listed are nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. Because of the tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court. Nichols v. Nichols, 32,219, p. 3 (La.App. 2nd Cir.9/22/99), 747 So.2d 120, 122-123.
However, Article 132 directs the trial court to award joint custody in the absence of a prior agreement between the parties or a showing, by clear and convincing evidence, that award of custody to one parent would be in the best interest of the child. See Evans v. Lungrin, 97-0541, p. 8 (La.2/6/98), 708 So.2d 731, 736. Therefore, looking to these principles, we review the assignment of error raised.
In its reasons for judgment the trial court did not discuss why it awarded sole custody to Ms. Jones. The judgment simply states that the sole care, custody and control of the minor child is granted to Ms. Jones subject to reasonable visitation rights in favor of appellant consisting of every other weekend, three weeks in the summer and alternating major holidays. In reviewing the evidence and considering the factors listed in Article 134, we can find no proof, by clear and convincing evidence, why custody was awarded solely to Ms. Jones.
Limited testimony and evidence was presented at the trial on the merits, which mainly addressed the issues of child support and changing the minor child's name. The testimony presented revealed that Ms. Jones and Anfernee lived with Ms. Jones' parents and had done so since Anfernee's birth. Ms. Jones also stated that she works nights at the Louisiana Correctional Institute for Women. At the time of trial, appellant testified that he had one other child, a 20-year-old daughter, and was employed with the Louisiana State Police. At the time of trial, Anfernee was two years old.
Considering the evidence presented and the factors listed in Article 134, we find no basis for the trial court's award of sole custody to Ms. Jones. The record does not disclose any evidence that would show by clear and convincing proof that it would be in the best interest of the child for sole custody to be awarded to Ms. Jones.
Therefore, we vacate the order of the trial court awarding sole custody of Anfernee to Ms. Jones and remand this matter to the trial court for a determination of why it would not be in the best interest of the child for joint custody to be awarded to the parties. If the trial court determines that there is no basis for denying an award of joint custody, then the trial court is ordered to render a joint custody decree and implementation order in accordance with La. R.S. 9:335.
Finally, in appellant's last assignment of error, he challenges the right of the trial *283 court to have determined this matter based on improper venue. Initially, we observe that appellant waived his right to object to venue in this case. La. C.C.P. art. 44 states that a party who objects to the venue of the court waives such objection by his failure "to plead the declinatory exception timely as provided in Article 928." La. C.C.P. art. 928 provides that a declinatory exception shall be pleaded prior to or in the answer. Nowhere in the record is there any motion, nor is there a statement in appellant's answer objecting to venue. Accordingly, appellant waived his right to object to the authority of the trial court to hear this case on that basis. Furthermore, we note that venue was proper in this case, according to La. C.C.P. art. 74.1. Therefore, we reject this assignment of error.

CONCLUSION
Based on our failure to find any evidence in the record justifying, by clear and convincing proof, the award of sole custody to Ms. Jones, we vacate that portion of the trial court's judgment and remand this matter to the trial court for a determination of why it would not be in the best interest of the child for joint custody to be awarded to the parties. If the trial court determines that there is no basis for denying an award of joint custody, then the trial court is ordered to render a joint custody decree and implementation order in accordance with the provisions of La. R.S. 9:335. In the event that joint custody is decreed, adjustment of the child support award may be required in accordance with La. R.S. 9:315.8(E). In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are equally assessed to appellant and Ms. Jones.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.
NOTES
[1] Judge Anne L. Simon, of the Sixteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In the order granting the motion to continue, the date set for the hearing was November 25, 1998. However, on November 10, 1998, the date set for the trial on the merits, it was agreed that the motion for summary judgment would be heard, and if denied, a trial on the merits would be set for a later date.
[3] La. R.S. 9:315.2 states, in pertinent part, that "[e]ach party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings.... The documentation shall include a copy of the party's most recent federal tax return." Although we note that the record does not contain a verified income statement from either party, nor tax returns or documentation of Ms. Jones' earnings, the trial transcript does contain the joint stipulations of the parties regarding the gross wages of Ms. Jones and appellant, which is permissible under La. R.S. 9:315.1(D).
[4] La. C.C. art. 134 provides:

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.