| t STEWART, J.
In this wrongful death action, we review whether the trial court erred in granting the defendants request to have the plaintiff undergo DNA testing. We find that the trial court erred as a matter of law, and we reverse for the reasons that follow.
FACTS
This lawsuit arises from a traffic accident on Highway 65 in Tensas Parish, Louisiana in which Andrew Stroughter (“Stroughter”) was killed in a collision with tractor trailer driven by Thomas Busby (“Busby”). Following the accident, multiple parties filed suit against Busby and his insurance carrier, Zurich American Insurance Company (“Zurich”) for the wrongful death of Stroughter. Those parties were: Alversia Stroughter, his ex-wife; Onterio McWright (“McWright”), his acknowledged son; LeShun Singleton, daughter of Stroughter; and Dianne Turner, Stroughter’s girlfriend, as natural tutrix for their minor child, Cietra Jenal Stroughter. This appeal focuses specifically upon the claims of McWright.
McWright was born to Gladysteen Harris (“Harris”) on June 8, 1970. Harris and Stroughter were never married. However, in child support proceedings in Madison Parish on March 3, 1982, Stroughter signed a notarized stipulation under La. R.S. 14:75.2 that was made an order of the *95 court wherein he admitted that McWright was his child and agreed to pay child support. Stroughter again stipulated that he was “the lawful parent” of McWright in an order and judgment fixing child support entered in the Superior Court of the State of Washington, King County on May 6, 1983, | ¿where he was cast in judgment for back child support. Finally, the March 1982 stipulation was amended on May 4, 1984, and Stroughter again signed another notarized stipulation and judgment admitting that he was the father of McWright and agreeing to pay child support.
When this wrongful death action ensued, the defendants filed an Exception of No Right of Action arguing that McWright was neither legitimate at birth, nor subsequently legitimized by Stroughter. Stroughter’s sisters were called in support of the defendants’ exception. Although they testified that their brother always contended that he was not McWright’s father, the record reveals that Stroughter never challenged his obligation to pay child support or the finding that he was the biological father of McWright. In fact, Stroughter paid the child support obligation until McWright turned eighteen.
In addition to requesting that the trial court grant their exception, the defendants submitted a motion to have a DNA test performed on McWright to determine if Stroughter was in fact his father. The trial court ordered the DNA testing. McWright sought a writ of review to this court which was denied on the showing made. McWright then submitted to the DNA testing which revealed that there was a 0% probability that McWright was the son of Stroughter. The defendants’ exception of No Right of Action was granted by the trial court, and McWright was dismissed from the lawsuit with prejudice. McWright then filed the instant appeal.
DISCUSSION
Although the appellant raises three assignments of error, the primary issue of dispute concerns whether or not the trial court erred as a matter of 13law by forcing McWright to submit to DNA testing. On appeal, McWright asserts that, as a matter of law, the issue of whether Stroughter was his father was settled in final judgments fixing child support in 1982, 1983, and 1984. Consequently, any attack on the validity of the assertions in those judgments should have been made within one year of the discovery of the alleged defect or nullity under Louisiana Code of Civil Procedure Article 2004. As a result, the defendants are pre-empted by operation of law from collaterally attacking those judgments in this wrongful death action.
Under La. C.C.P. art.2004, a final judgment obtained by fraud or ill practices may be annulled within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practice. The trial court erred as a matter of law when it failed to treat the child support judgments from Madison Parish, Louisiana and King County, Washington as final judgments. It appears that the trial court treated the judgments as mere acknowledgments. However, our examination of the record leads us to the conclusion that while the acknowledgments were first made in stipulations under La. R.S 14:75.2 to avoid prosecution for back child support, these acknowledgments were also made a part of the final judgment fixing the child support obligation. As such, the proper manner for attacking said judgments would have been to bring a direct action for nullity.
The one year limitation of La. C.C.P. art.2004 is considered a period of peremption rather than prescription. Burkett v. Property of Douglas, 575 So.2d 888, 892 (La.App.2d Cir.1991). Statutes of peremption do not merely bar the remedy; they *96 destroy the cause of action itself. After the 14time limit expires, the cause of action is lost and no longer exists. Russland Enterprises v. City of Gretna, 98-676 (La.App. 5 Cir. 1/26/99), 727 So.2d 1228. Thus, the proper procedural device for raising an issue of peremption is an exception of no cause of action. Id. We note that the court of appeal may supply an exception of no cause of action on its own motion. La. C.C.P. art. 927.
The record shows that as early as 1971, Stroughter was aware that there was a possibility that McWright was not his son, yet he acquiesced to the payment of child support in 1982, and he continued to pay until McWright turned eighteen. Despite the fact that he had a reasonable belief that he was not McWright’s biological father, Stroughter never challenged paternity even though he could have demanded DNA testing when he was prosecuted for back child support. After 1985, Stroughter was perempted from attacking the judgment in a nullity action. This peremption has the same effect for the defendants in this matter. The trial court erroneously allowed the defendants to enjoy a right that was foreclosed to Stroughter himself with their collateral attack on Stroughter’s parentage of McWright in this wrongful death proceeding.
Consequently, the trial court should have never forced McWright to undergo DNA testing to prove he was the son of Stroughter, because he already had a valid final judgment stating such. It is immaterial what the results of that test were because the evidence should have never been admitted.
|fiThe facts of this case are analogous to those in Lastrapes v. Willis, 93-1417 (La.App. 3d Cir.4/6/94), 635 So.2d 1281. Jerome Lastrapes, Jr. was born on November 6, 1979, to Rose Willis. Jerome Lastrapes, Sr. voluntarily executed an acknowledgment of paternity on July 28, 1980. In December 1990, the Louisiana Department of Social Services brought an action on behalf of Ms. Willis against Lastrapes for the support of the minor child. On April 8, 1993, Lastrapes filed a petition to disavow paternity alleging that he was not the biological father of the minor child, and that he had discovered this fact in February 1993. Apparently another individual, Sam Joubert, had informed him that he and Ms. Willis had sexual relations in March 1979. An exception of No Right of Action was filed by the state and denied by the trial court which ordered Lastrapes, Willis, and the minor child to submit to blood testing. The state argued that the trial court erred in ordering the blood tests be performed to determine paternity in this disavowal action pursuant to La. R.S. 9:396 when there was a valid preexisting acknowledgment in authentic form. The Third Circuit dismissed Lastrapes’ suit with prejudice. The court recognized that there was no specific codal authority governing the time limit for a father who was not the husband of the mother of the child to bring a disavowal action, and that the code only specifically dealt with disavowal actions by the husband. See, e.g., La. C.C. arts. 187-190. However, La. R.S. 9:305 was enacted in August of 1993, well after Lastrapes filed his suit, and it set a time frame for a disavowal of paternity by a man who was not the husband of the mother as follows:
| ^Notwithstanding the provisions of Civil code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for *97 filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten year's whichever ends first.
As a result, the court determined that Lastrapes did not have a cause of action when he filed his suit in April of 1993. The court determined that La. R.S. 9:305 only gives a cause of action for paternity testing when an action is ancillary to a child support proceeding. According to Black’s Law Dictionary, 5th edition (1983), an ancillary proceeding is:
One growing out of or auxiliary to another action or suit, or which is subordinate to or in aid of a primary action, either at law or in equity. In state courts, a procedural undertaking in aid of the principal action.
In this case, the defendants’ action is the principal action and it is not ancillary to a child support proceeding. To permit a collateral attack on a final judgment in this matter would be in contravention of the law.
The defendants rely heavily of Succession of Robinson, 94-2229 (La.5/22/95), 654 So.2d 682 to support their assertion that the trial court properly allowed DNA testing. We find that Robinson is distinguishable from the case at bar. In Robinson, Hardie Robinson executed a statutory will in 1971 in which he formally acknowledged three children that were born to his wife from her previous marriage. In 1988, Robinson changed the manner in which his assets were to be distributed by executing a new statutory will and revoking the 1971 will. The previously acknowledged women were not mentioned in the 1988 will. After Robinson died in 1992, |7the acknowledged women intervened in the succession seeking to be recognized by the court as Robinson’s acknowledged children and thus allowed to participate in the succession. The trial court found that the 1971 will executed by Robinson was an acknowledgment of the three women as his daughters and that they did not have to undergo DNA testing to prove they were Robinson’s biological children. The supreme court found that under La. R.S. 9:396, the court could force the women to submit to DNA testing. La. R.S. 9:396, a statute aimed at establishing paternity provides:
Notwithstanding any provision of the law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveau, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to the drawing of blood samples, including but not limited to blood and tissue type, to be determined by appropriate testing procedure. If any party refuses to submit to such tests, the court may resolve the issue of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
Under La R.S. 9:396 the court only has authority to order blood tests where paternity is relevant. Had Stroughter challenged the final judgment wherein he acknowledged that he was McWright’s father within one year from the time he discovered that there was a reasonable probability that he was not his father, then La. R.S. 9:396 may be applicable. However, Stroughter’s failure to make a challenge has caused his cause of action to be per-empted and prevents the defendants or anyone else who would seek to stand in Stroughter’s shoes and invalidate his acknowledgment and the judgment casting him as the father of McWright.
|sWe also find that the instant case is distinguishable from Robinson in that the *98 validity of a final judgment, rather than a mere acknowledgment, is at issue. The Robinson court did not face the issue of whether or not a judgment based on an acknowledgment could be annulled after the one year period following the discovery of its defect has elapsed. Further, in Robinson, the father took direct action to disavow his acknowledgment of the women by revoking the will in which he had previously made the acknowledgment. An acknowledgment in a will that was later revoked cannot be said to have the same force and effect of a final judgment that was never attacked for nullity. Stroughter made no efforts to dispute his acknowledgment of McWright or the judgment that gives rise to the presumption that he was McWright’s father.
The existence of a final judgment stating that Stroughter was the father of McWright creates a strong presumption in McWright’s favor. Rousseve v. Jones, 97-1149 (La.12/2/97), 704 So.2d 229. In support of their exception of No Right of Action, the defendants called Stroughter’s sisters to testify about their knowledge of his relationship with McWright. They asserted that Stroughter and McWright did not enjoy a father/son relationship. In fact, the testimony of Stroughter’s sisters suggested that he knew he was not McWright’s father as early as three months after McWright’s birth. However, that testimony alone is not sufficient to overcome the presumption of parentage. Their testimony only served to demonstrate that Stroughter was not duped into thinking he was McWright’s father by fraud or ill practice, but that he willfully assumed the [ ¡¡responsibility in spite of reasonable information that he may not have been McWright’s father.
We conclude that Stroughter was time barred from seeking to annul the judgment that east him as the father of McWright. As such, it was improper for the trial court to allow the defendants to collaterally attack that judgment when Stroughter would have been perempted from bringing a nullity action. This finding pretermits any discussion of the other issues raised on appeal.
CONCLUSION
Based on the foregoing, we find that the trial court erred as a matter of law in ordering McWright to undergo DNA testing. As such the results of said DNA are inadmissible. We hereby reverse the trial court’s dismissal of McWright from the instant suit, reinstate him as a plaintiff, and remand this matter to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.